**Hubbard Stallworth BENDER, Petitioner,**

v.

**SOUTHERN PACIFIC TRANSPORTATION COMPANY, Respondent.**

No. B–8660.

Supreme Court of Texas.

May 21, 1980.

Schmidt, Matthews & Brannon, W. Douglas Matthews, Houston, for petitioner.

Baker & Botts, James Edward Maloney, John C. Allen and Philip J. John, Jr., Houston, for respondent.

GARWOOD, Justice.

Hubbard Stallworth Bender brought this suit against Southern Pacific Transportation Company under the Federal Employers' Liability Act, 45 U.S.C.A. Section 51 (1972) ["FELA"], for damages sustained when he jumped from a moving railroad car which had derailed. The jury found that Southern Pacific was negligent in not properly inspecting a switch and that Southern Pacific did not fail to furnish Bender a reasonably safe place in which to work or reasonably safe equipment with which to work. The trial court rendered judgment for Bender on the finding of negligent failure to inspect the switch. The court of civil appeals reversed on the ground that the jury findings were in irreconcilable conflict. 582 S.W.2d 568. We hold that the findings are not in irreconcilable conflict, and accordingly reverse the judgment of the court of civil appeals and affirm that of the trial court.

Bender worked for Southern Pacific as a switchman. His responsibilities included positioning railroad cars and assembling and disassembling trains at the Englewood Yard in Houston. On November 13, 1975, Bender was working as foreman of a four-member crew. The crew assembled eleven railroad cars and a switch engine, which pushed the other cars from behind. In order to move to its destination in another part of the yard, the train had to pass over a switch known as the N–6–W [North No. 6 West] switch. One of the crew members, Bryan Hiser, walked over to the switch to line it properly, which he did by "throwing" the switch into position. Then Bender and two of the crew members stood on the lead car, while the engineer operated the engine at the rear of the train. The engineer was out of sight of Bender and the crew, and communicated with them by "walkie-talk-

ie." As the cars were pushed along the track, the front wheels of the lead car passed over the N–6–W switch onto the proper line. The N–6–W switch then malfunctioned and "threw" underneath the car, causing the rear wheels of the lead car and the next one or two cars to derail. Bender called by walkie-talkie to the engineer to stop the train. When it did not stop, he jumped from the car, landed on a hard surface, and seriously injured his foot.

Bender sued Southern Pacific under the FELA, alleging Southern Pacific was liable for negligence in failing to provide him with reasonably safe equipment with which to work and a reasonably safe place in which to work. At trial, Bender attempted to show that the N–6–W switch was not properly inspected, repaired, or replaced; that the use of engine brakes rather than air brakes [train line brakes] when positioning the cars was improper; that the brakes were not timely applied; and that the communications system between switchman and engineer was unreliable.

The relevant special issues, definitions, and instructions given, and the jury answers, were as follows:

SPECIAL ISSUE NO. 1

Do you find from a preponderance of the evidence that on or before the occasion in question, the Southern Pacific Transportation Company, acting through its officers or employees other than Plaintiff Hubbard Bender, was negligent[1] with respect to (a) not properly inspecting the switch; (b) not properly repairing the switch; (c) not replacing the switch; (d) disconnecting the train line brakes; (e) not applying the brakes in time; (f) not providing an effective communications system for this crew?

Answer "Yes" or "No" on each line in Column 1. If any of your answers in Column 1 are "yes" then state whether you find from a preponderance of the evidence that any such negligence was a proximate cause of the occurrence in question. Answer "Yes" or "No" on the corresponding lines of Column 2.

|  | Column 1 Negligent | Column 2 Proximate Cause |
|---|---|---|
| (a) Not properly inspecting the switch | Yes | Yes |
| (b) Not properly repairing the switch | No |  |
| (c) Not replacing the switch | No |  |
| (d) Disconnecting the train line brakes | No |  |
| (e) Not applying the brakes in time | No |  |
| (f) Not providing an effective communications system for this crew | No |  |

SPECIAL ISSUE NO. 2

Do you find from a preponderance of the evidence that on the occasion in question, the Southern Pacific Transportation Company, acting through its officers or employees other than Plaintiff Hubbard Bender, failed to furnish Hubbard Bender (a) a reasonably safe place in which to work or (b) reasonably safe equipment with which to work?

Answer "Yes" or "No" on each line in Column 1. If any of your answers in Column 1 are "Yes" then state whether you find from a preponderance of the evidence that any such failure to furnish was a proximate cause of the occurrence in question? Answer "Yes" or "No" on the corresponding lines of Column 2.

|  | Column 1 Failure to Furnish | Column 2 Proximate Cause |
|---|---|---|
| (a) Place to work | No |  |
| (b) Equipment | No |  |

You are instructed by the Court that a railroad owes a continuing nondelegable duty to its employees to provide them with a reasonably safe place in which to work. You are instructed that the term "reasonably safe place in which to work" as used herein, is meant such a place from a standpoint of safety to employees as would be furnished by an ordinary prudent railroad in the exercise of ordi-

1. The charge contained no definition of "negligent" or "negligence." "Proximate cause" was defined in terms of "played any part, no matter how small, in actually bringing about or causing the injury or occurrence," and not in terms of foreseeability.

nary care to its employees under the same or similar circumstances.

You are further instructed by the Court that a railroad owes a continuing non-delegable duty to its employees to provide them with reasonably safe equipment with which to work in performing their duties. You are instructed that the term "reasonably safe equipment" as used herein, is meant such equipment from a standpoint of safety to employees as would be furnished by an ordinary prudent railroad in the exercise of ordinary care to its employees under the same or similar circumstances.

Based upon the jury finding of negligence in failure to inspect the switch, the trial court rendered judgment for Bender. The court of civil appeals reversed and remanded, holding that the jury responses to the first and second special issues were in irreconcilable conflict.[2]

■ In reviewing the jury findings for conflict, the threshold question is whether the findings are about the same material fact. *Pearson v. Doherty*, 143 Tex. 64, 183 S.W.2d 453, 455 (1944). A court may not strike down jury answers on the ground of conflict if there is any reasonable basis upon which they can be reconciled. *Little Rock Mfg. Co. v. Dunn*, 148 Tex. 197, 222 S.W.2d 985, 989 (1949). The court must "reconcile apparent conflicts in the jury's findings" if reasonably possible in light of the pleadings and evidence, the manner of submission, and the other findings considered as a whole. *Ford v. Carpenter*, 147 Tex. 447, 216 S.W.2d 558, 562 (1949). Where the issues submitted "admit of more than one reasonable construction," that which avoids a conflict in the answers is generally adopted. *See Merritt v. King*, 66

S.W.2d 464, 466 (Tex.Civ.App.—Texarkana 1933, writ ref'd). As we stated in *Producers Chemical Co. v. McKay*, 366 S.W.2d 220, 224 (Tex.1963), "It is our duty to harmonize jury findings when possible." We do not determine whether the findings may reasonably be viewed as conflicting; to the contrary, the question is whether there is any reasonably possible basis upon which they may be reconciled.

■ In the instant case, neither the correctness of the individual issues nor the propriety of the submission of both issues is before us.[3] Our inquiry is limited to the question of conflict, and our review of the jury findings is limited to a consideration of the factors before the jury. *See Little Rock Mfg. Co. v. Dunn*, 148 Tex. 197, 222 S.W.2d 985, 988–89 (1949) [different jury findings of "proper lookout" and "negligence" conflicted where submitted definition of one necessarily included the other, but there would have been no conflict absent the definition given]; *compare Indemnity Insurance Co. of North America v. Craik*, 162 Tex. 260, 346 S.W.2d 830 (1961), with *Employers Reinsurance Corp. v. Holland*, 162 Tex. 394, 347 S.W.2d 605 (1961) [in worker's compensation cases involving identical issues, jury findings held not to conflict in one case and to conflict in the other where the only difference between the cases was the definition given the jury].

Southern Pacific contends that the finding of negligence in failing to inspect the switch conflicts with the negative finding on failure to furnish Bender reasonably safe equipment with which to work. It relies primarily on *Missouri-Kansas-Texas R.R. Co. v. Shelton*, 383 S.W.2d 842 (Tex.Civ. App.—Dallas 1964, writ ref'd n. r. e.), *cert.*

---

**2.** Southern Pacific objected to the charge on several grounds, including assertions that each separate subdivision of special issue 1 was without support in the pleadings, was evidentiary only and not an ultimate issue, and when taken in conjunction with special issue 2 constituted a dual submission and was multifarious, and that each separate subdivision of special issue 2, when taken in connection with special issue 1, likewise was multifarious and constituted a dual submission. None of these

objections are before us, however, as all of Southern Pacific's points in the court of civil appeals related exclusively to the assertion that the answers to the issues were in irreconcilable conflict.

**3.** Nor do we have before us the matter of whether in a submission such as this further explanatory instructions should be given or, if so, what same should be.

*denied,* 382 U.S. 845, 86 S.Ct. 54, 15 L.Ed.2d 85 (1965). There, the plaintiff switchman was injured when he apparently fell as a result of stepping on debris in the area where he alighted from a moving train in the railroad yard. The court of civil appeals held that the jury finding that the railroad was negligent in permitting the debris to remain in the area where plaintiff alighted conflicted with its finding that the railroad had not failed to furnish plaintiff a reasonably safe place in which to work. However, the *Shelton* case is not controlling here. In *Shelton*, the court relied primarily on the following "very important instruction" given in connection with the reasonably safe-place-to-work issue:

> You are further instructed that the duty to exercise ordinary care to furnish a safe place to work does not have reference only to the physical condition of the place itself but also has reference to the negligent acts, if any, you find of defendant's employees on the occasion in question. *Id.* at 849.

This instruction was construed to require the jury to find that the place to work was unsafe if it found (as it did in respect to the debris issue) *any* negligent act on the part of the railroad relative to the work place. In other words, the instruction was regarded as tying the specific negligence issue to the more general safe-place-to-work issue. The court of civil appeals considered that the charge here contained wording equivalent to the quoted *Shelton* instruction because special issue 2 inquired whether the railroad "acting through its officers or employees" failed to furnish Bender a reasonably safe place to work. We do not regard this language as comparable to the *Shelton* instruction. The jury was not expressly told, as it was in *Shelton*, that the safe-place-to-work question had reference not only to the physical condition of the place but *also* to *any* negligent acts of the railroad which the jury *found*. There are no instructions in this case which in any way tie special issues 1(a) and 2 together.[4]

Both parties cite the decision of the United States Supreme Court in *Arnold v. Panhandle & S.F. Railway Co.*, 353 U.S. 360, 77 S.Ct. 840, 1 L.Ed.2d 889 (1957), reversing the decision of the court of civil appeals reported in 283 S.W.2d 303 (Tex.Civ.App.— Amarillo 1955, writ ref'd n. r. e.). There the jury found that the railroad failed to furnish a reasonably safe place to work, but also found for the railroad on each of the various particular assertions of negligence submitted. In holding it improper to reverse on the grounds of conflict in the jury answers, the Supreme Court stated:

> . . . these answers present no *square* conflict. The findings on these special issues do not exhaust all of the possible grounds on which the prior unsafe-place-to-work finding of the jury may have been based. *Id.* 353 U.S. at 361. 77 S.Ct. at 841. [Emphasis added.]

We do not regard the *Arnold* opinion as speaking to the problem of whether or in what circumstances an affirmative answer to a specific finding of negligence will be held to fatally conflict with a negative answer to the more general issues of safe place to work or safe equipment.

While we do not read *Arnold*, or other decisions of the United States Supreme Court of which we are aware, as holding that in FELA cases a state court may never set aside a judgment for the plaintiff because of conflict in the jury answers to special issues, the *Arnold* opinion nevertheless appears to reflect the view that there should be no reversal for asserted conflict in jury answers where there is any reasonably possible basis for reconciliation. As noted, the opinion speaks of the absence of a "*square* conflict." [Emphasis added.] This view is also reflected by the following statement in *Gallick v. Baltimore and Ohio Railroad Company*, 372 U.S. 108, 119, 83 S.Ct. 659, 666, 9 L.Ed.2d 618 (1963):

> . . . it is the duty of the courts to attempt to harmonize the answers, if it is

---

4. The safe-place-to-work instruction in *Shelton* also included the statement that the duty in such regard applied "even though the work may have been fleeting or infrequent." No comparable instruction appears here.

possible under a fair reading of them: "Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way." *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798, 807. We therefore must attempt to reconcile the jury's findings, by exegesis if necessary, as in *Arnold v. Panhandle & S. F. R. Co.*, 353 U.S. 360, 77 S.Ct. 840, 1 L.Ed.2d 889, . . . before we are free to disregard the jury's special verdict and remand the case for a new trial. Certainly this language is not inconsistent with the general approach which the courts of this state have taken when faced with the question of whether jury findings are in irreconcilable conflict. *See, e. g., Traywick v. Goodrich*, 364 S.W.2d 190 (Tex.1963).

We have noted the absence of instructions tying special issues 1(a) and 2 together. Determination of conflict thus turns on the wording of the issues, the structure of the charge, and the evidence. If two issues which do not expressly refer to the same material facts are answered in an apparently conflicting manner, our courts have generally interpreted the answers as referring to different material facts, if reasonably possible under the wording of the issues, the structure of the charge, and the evidence.[5]

For example, in *Producers Chemical Co. v. McKay*, 366 S.W.2d 220 (Tex.1963), the jury found that the defendant negligently "permitted its compressor to pump oil into its outlet line at the time and place in question," but in answer to a subsequent issue also found that "if there was negligence on the part of anyone in the use of defendants' compressor on the occasion in

question for the purpose and in the manner in which it was being used, such negligence was the negligence of" parties other than defendant. *Id.* at 223–24. This court reconciled the findings by an interpretation that in the latter finding the jury may have had reference only to the use of the compressor for unloading the hole or to the manner in which it was employed for such purpose, while in the earlier finding the jury may have had reference only to the method of continued compressor operation after it had been employed for unloading the hole in the particular manner in question. Our opinion in *McKay* recognized that the former issue "was hardly a clear submission," but held that "in the absence of objection" it could "be interpreted" in the manner indicated so as to harmonize the findings. *Id.* at 224. *See also Meacham v. Loving*, 155 Tex. 279, 285 S.W.2d 936, 938 (1956) ["attempting to cross" the street, and "entered the street intersection" construed to refer to different material facts so as to reconcile apparently conflicting findings]. Similarly, where one issue is worded in general language of somewhat uncertain scope, and another issue is worded more precisely, the former has been given a construction which does not embrace the latter in order to reconcile what would otherwise be conflicting answers. *See, e. g., Kimble v. Younger Bros.-J. M. English Truck Lines*, 283 S.W.2d 254, 255–56 (Tex.Civ.App.—Galveston 1955, writ ref'd n. r. e.); *Manlove v. Lavelle*, 235 S.W. 324, 325 (Tex.Civ.App.—San Antonio 1921, no writ).[6]

■ Special issues 1(a) and 2 here do not *expressly* inquire about the same material facts. None of the subdivisions of special issue 1 speaks in terms of "reasonably safe"

---

5. An exception to this may have prevailed in situations (such as existed under the former practice of submitting inferential rebuttal issues) where the issues were plainly designed to submit opposite sides of the same coin, such as negligence and unavoidable accident. No such situation obtains in this case.

6. This is to be distinguished from the situation where the only evidence which supports a given answer to a broadly worded issue relates entirely to the subject matter of a specific issue

which has been answered in a conflicting manner. In such a situation there is clearly a conflict. In some cases the general issue has simply been disregarded, and judgment entered on the specific issue. *See Cunningham v. Suggs*, 340 S.W.2d 369 (Tex.Civ.App.—Eastland 1960, writ ref'd n. r. e.); *Barclay v. C. C. Pitts Sand and Gravel Co.*, 387 S.W.2d 644, 647 (Tex.1965). *But see Pearson v. Doherty*, 143 Tex. 64, 183 S.W.2d 453, 455–56 (1944).

or "safe" with reference either to equipment or to place, nor do any of such subdivisions (except for 1(f)) expressly inquire about either the condition or the furnishing of any place or equipment. By contrast, the inquiry in special issue 2 is made in terms of furnishing Bender a place to work or equipment to work with that is reasonably safe. We next determine whether these issues must be construed to inquire about the same material facts by necessary *implication* from their wording, the structure of the charge, and the evidence.

■ No irreconcilable conflict exists between the answer to special issue 1(a), that the railroad was "negligent" (an undefined term) in not properly inspecting the switch, and the answer to special issue 2(a), that it did not fail to furnish plaintiff a reasonably safe place in which to work. Special issue 2 makes a distinction between "place in which to work" and "equipment," and the jury could have considered that special issue 1(a) related only to failure to properly inspect an item of equipment, while special issue 2(a) did not relate to equipment at all. We note it has been held that findings of failure to properly maintain a switch (with which the plaintiff was working at the time of his injury) and failure to furnish reasonably safe equipment with which to work do not conflict with a finding that the railroad did not fail to provide a reasonably safe place in which to work. *St. Louis Southwestern Ry. Co. v. Greene*, 552 S.W.2d 880 (Tex.Civ.App.—Texarkana 1977, no writ). Southern Pacific does not quarrel with the result in *Greene*, nor does it seriously urge a conflict between the answers to special issues 1(a) and 2(a).

■ As noted, Southern Pacific's main contention is that the answer to special issue 1(a) conflicts with the answer to special issue 2(b). This presents a more difficult question. Nevertheless, we believe the answers to these issues can properly be reconciled. Special issue 2(b) inquires whether the railroad "failed to furnish *Hubbard Bender* reasonably safe equipment with which to work." [Emphasis added.] The jury may have construed this to refer

only to equipment furnished or provided *to Bender* to be worked with *by Bender* personally. The jury may have regarded the switch as equipment, but *not* as equipment furnished *to Bender* or to be worked with *by Bender*. On the occasion in question, Bender did not personally operate, work with or contact the switch. A different situation might be presented if Bender had had the task of lining the switch points that night, and had injured himself while throwing the switch. There was evidence that such injuries sometimes occurred. Further, this switch was not furnished to Bender personally. This contrasts with the walkie-talkies which were furnished to Bender personally and were used by him personally. Special issue 1(f) related to these walkie-talkies, inquiring whether the railroad was negligent in "not providing an effective communications system." Thus, special issue 1(f) asked not only about equipment furnished to and used by Bender personally, but also was phrased in terms of "providing" and in terms of a characteristic ("effective") of such equipment. This parallels the manner in which special issue 2(b) was asked, as it too inquired about furnishing or providing Bender equipment with which to work and about the condition ("reasonably safe") of such equipment. But special issue 1(a) asks nothing about furnishing or providing, or failing to furnish or provide, anything; it does not ask about the condition of the switch; and the switch was not furnished to Bender or worked with by him. Thus, the contrast between special issue 1(f)'s similarity to and special issue 1(a)'s difference from special issue 2(b) may also reasonably have led the jury to believe that the inquiry posed by 1(a) was not included within the scope of that posed by 2(b). In sum, the jury reasonably may have believed that the switch which was asked about in 1(a) was not equipment furnished to Bender to be worked with by him within the scope of the inquiry made by 2(b).

Thus, special issues 1(a) and 2 do not necessarily refer to the same material facts and there is no instruction tending to tie them together. Under the evidence and the

structure of the charge, the answers to these issues can be harmonized. There being no irreconcilable conflict in the jury answers, the judgment of the court of civil appeals is reversed and that of the trial court is affirmed.