**Todd FURNACE, et al., Appellants,**

v.

**John Earl FURNACE, et al., Appellees.**

**No. C14–87–1026–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

Dec. 21, 1989.
Rehearing Denied Jan. 18, 1990.

Jimmy Phillips, Jr., Angleton, for appellants.

Gary L. McConnell, Angleton, for appellees.

Before PAUL PRESSLER, CANNON and ELLIS, JJ.

## OPINION

CANNON, Justice.

Appellants brought suit to determine their interests in a mineral trust. They raise ten points of error asserting error in the charge, insufficient evidence, and conflicting jury answers to challenge a judgment in favor of appellees. We affirm the judgment of the trial court.

Manvel–Tex Inc. was formed in July of 1969. The Manvel–Tex Mineral Trust was created by the corporation in 1978. All of the minerals owned by the corporation were transferred into the trust. The trust instrument provided it was "created for the use and benefit of each of the present and future stockholders of Manvel–Tex, Inc., the present identity of each stockholder being set forth in Exhibit A...."

In 1980, Todd Furnace, one of the three brothers who started the corporation, and his children began discussing selling their stock or the corporation itself. Todd believed, since the children were grown and married, there was too much potential for discord. He told John Furnace, Todd's nephew and son of founder R.L. Furnace, that if he did not buy the stock, Todd's son-in-law would take over the corporation. Informal discussions among the family members took place over several months.

At the annual stockholders meeting in July of 1980, John Furnace formally offered to buy the stock of those wishing to sell. During the discussion of the stock sale, the question of whether the sale of corporate stock would affect beneficial interest in the mineral trust was raised. Though apparently no one had read the trust agreement for years, various parties expressed their opinions. John Furnace

stated he did not think the stock sale would affect interest in the trust. When someone in the group said they would want to reserve the minerals, Lum Furnace, one of the founding brothers and a corporate director at the inception of the trust, responded that a person could not reserve the minerals and sell their stock. Todd Furnace replied by telling his brother he "didn't know a damned thing about the mineral trust. He [Todd] knew what he could do."

The record reveals appellants had been involved in real estate, or oil and gas transactions for some time. Those who did not engage first hand in such transactions were married to individuals who did. Even after the issue of the affect of the stock sales on beneficial interest in the mineral trust was raised, no one asked to read the trust agreement, or to postpone the decision to sell their stock to allow a determination of the issue. Appellants were among those signing stock option agreements with John Furnace at that meeting. All were paid thirty dollars ($30) in cash, or thirty-two dollars ($32) on terms, per share for their stock.

In the summer of 1984, Todd Furnace began making inquiries into buying the mineral interests of present and former stockholders. After Todd Furnace demanded John Furnace and his children sell Todd their mineral interests, John discovered he had not been fully informed about some lucrative leasing agreements negotiated by Todd. John then read the trust agreement and determined that interest in the trust was transferred at the time of the stock sale. An opinion letter from Leland Kee, the attorney who drafted the trust agreement, confirmed his belief that he and his children, as the only present stockholders of Manvel–Tex Inc., were now the only beneficiaries of the mineral trust. He then ceased trust disbursements to all former stockholders. It is from this chain of events that the present law suit arose.

■ In their first point of error, appellants contend they were entitled to judgment as a matter of law under the terms of the trust agreement. This would be so only if the document is deemed unambiguous. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983). We agree with the trial court that the document was susceptible to more than one interpretation, and properly submitted to the jury. More importantly, however, appellant is not permitted to argue a theory on appeal that is different from that presented to the court below. It is axiomatic that, having argued ambiguity and lost in the trial court, appellants cannot now assert that the trust agreement is unambiguous. *Davis v. Campbell* 572 S.W.2d 660, 662 (Tex.1978); *Hilsher v. Merril Lynch, Pierce, Fenner & Smith*, 717 S.W.2d 435, 441 (Tex.App.—Houston [14th Dist.] 1986, no writ) *Phillips v. Inexco*, 540 S.W.2d 546, 550 (Tex.Civ.App.—Tyler 1976, writ ref'd n.r.e.); *Zephyr Oil Co. v. Cockburn*, 215 S.W.2d 647, 651 (Tex.Civ.App.— Galveston 1948, writ ref'd n.r.e.).

Appellants' position throughout the trial was that the trust agreement was ambiguous. Beginning with the first witness called, counsel for appellants asked questions concerning the witnesses' interpretation of the trust agreement and the intent of the parties at its formation.

In the trial court, appellees argued that the language of the trust agreement was unambiguous, and the terms of the agreement were clear that beneficial interest in the trust would automatically transfer with the sale of the corporate stock. When appellees' urged that point in motions for directed verdict, appellants responded both times that a directed verdict was improper "since the document [was] ambiguous" and they felt "the evidence [was] ripe with factual issues concerning the sale of the stock and the intent of the parties and the intent of the parties in the creation of the trust, intent of the parties in termination of the trust...." When asked about the meaning of the trust agreement during cross-examination, appellant Todd Furnace, one of the three trustees, testified "[t]hat's what this lawsuit is about. If I could read the thing and interpret it, we wouldn't need all you lawyers."

Additionally, unlike appellees, appellants did not object when the issue was sub-

mitted to the jury. Appellants' only objection to Special Issue 1[1] was that the burden was unduly placed on them.

Having urged the trial court to find the trust agreement ambiguous and to submit the issue to the jury, appellants cannot now, following an unfavorable finding from the jury, argue that by the terms of the agreement they are entitled to judgment as a matter of law. Point of error number one is overruled.

Appellants assert in points of error four and five that the evidence is legally and factually insufficient to support the jury's answer to Special Issue No. 1. We do not agree.

■ When both legal and factual sufficiency points are raised, we must first examine the legal sufficiency of the evidence. In reviewing the record, we are to consider only the evidence and inferences that tend to support the jury's finding, and disregard evidence and inferences to the contrary. *King v. Bauer,* 688 S.W.2d 845, 846 (Tex. 1985). If there is any evidence of probative value to support the finding, we must uphold the jury's finding and overrule the point of error. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

If the finding is supported by legally sufficient evidence, we must then weigh and consider all the evidence, both that in support of and that contrary to the challenged finding. The jury's finding must be upheld unless it is so against the great weight and preponderance of the evidence as to be manifestly unjust or erroneous. *Pool v. Ford Motor,* 715 S.W.2d 629, 635 (Tex.1986). We may not substitute our opinion for that of the trier of fact merely because we might have reached a different conclusion. *Benoit v. Wilson,* 150 Tex. 273, 239 S.W.2d 792, 896 (1951); *Thompson v. Wooton,* 650 S.W.2d 499, 501 (Tex.App. —Houston [14th Dist.] 1983, writ ref'd n.r. e.). Further, the jury as trier of the facts is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Rego v. Brannon* 682 S.W.2d 677, 680 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.).

■ Applying those principles to our review of the record before us, we must uphold the jury's answer. Among the testimony heard by the jury was that of Lum Furnace, one of the original stockholders and a corporate director at the time of the creation of the trust. Lum Furnace testified that interest in the trust would automatically transfer with the sale of the stock. During the stockholders meeting in July 1984, when the stock sales occurred, Lum Furnace stated that stockholders could not sell their stock and still maintain a beneficial interest in the mineral trust. The record also contains the opinion letter of attorney Leland Kee, who drafted the trust agreement, which states that the beneficial interest in the mineral trust follows the stock.

Though appellants argue the purpose of the trust was to ensure that the mineral interests stayed in the family and that a beneficiary's interest could be divested only by that person's death, their testimony in the record indicates otherwise. Appellant Wilma Mueller, a corporate director at the inception of the trust, testified the purpose of the trust was to give the trustees freedom to deal with minerals that were available when buying and selling land for the corporation. She told Lum Furnace, after reading the trust agreement, anyone who could read English could see they [appellants] didn't have a leg to stand on. Testimony from several witnesses stated that appellant Todd Furnace had himself been trying to buy beneficiaries' mineral interests in the summer of 1984. In fact, it was Todd Furnace's action that prompted John Furnace to review the language of the trust agreement, and to obtain legal advice on whether former stockholders retained

---

**1.** Special Issue 1 read as follows: "Do you find from a preponderance of the evidence that it was the intention of the persons creating the Trust, that the sale of the corporate stock in Manveltex, Inc. would not automatically cause the Trust interest of the beneficiary in Manveltex Mineral Trust to transfer to the person purchasing the corporate stock? Answer 'It would not automatically transfer' or 'It would automatically transfer'. The jury answered that the stock *would* automatically transfer." [Emphasis added.]

an interest in the mineral trust and whether their interest in the trust could be sold.

The trust agreement and the corporate minutes were also available for the jury's review. The relevant language of the trust agreement is as follows:

> ... [I]t would be to the best interest of the corporation and its stockholders to transfer the legal title to said oil gas and other mineral interest to certain of its stockholders, as Trustees *in trust for the use and benefit of all of the stockholders of the corporation* and to authorize said Trustees to take all necessary action to execute mineral leases and to enter into mineral agreements with third parties in an effort to accomplish development of [the mineral interests] ...

> ... [T]o accomplish the above purpose ... Trustor does hereby make, establish and declare that a trust is hereby created to be known as MANVELTEX MINERAL TRUST, *for the use and benefit of each of the present and future stockholders of Manveltex, Inc., the present identity of each stockholder being set forth in Exhibit A* ...

> ... [W]hich property shall constitute the initial corpus of the <u>Manveltex mineral trust</u> for *the use and benefit of each holder of shares of the common stock of Manveltex, Inc., respectively.*

[Emphasis added.]

Viewing the record in its entirety, we cannot say the jury's finding was manifestly unjust or erroneous. Points of error four and five are overruled.

Appellants' pleadings sought recission of the stock sale, arguing that the parties were mutually mistaken in their understanding of the sale's effect on the interests in the mineral trust. In points of error two and three, appellants contend the trial court erred in refusing to submit their theory of mutual mistake to the jury, and that the evidence established as a matter of law that the transfer of their beneficial interest in the trust was the result of a mutual mistake.

■ Appellants are correct in arguing that, although the mistake alleged by them involves the legal effect of the stock sale

on their beneficial interest in the mineral trust, it must be assessed as a mistake of fact, and not one of law.

While the general rule is well settled that a court will not relieve against a mistake of law, it is also generally held that such rule is confined to mistake of the general rules of law, and has no application to the mistake of persons as to their own private legal rights and interests. Private right of ownership is a matter of fact; it may be, and most frequently, of course, is, the result also of law. So that, if parties contract under a mutual mistake and misapprehension as to such rights, the result is that the agreement is liable to be set aside as having proceeded upon a common mistake.

*Columbian National Fire Insurance Co. v. Dixie Co-op,* 276 S.W. 219, 221–22 (Tex. Comm'n App.1925, judgm't adopted).

■ However, the record reveals that appellants failed to submit, either orally or in writing, any issue on mutual mistake as required by TEX.R.CIV.P. 278. They have, thus, waived any error as to failure to submit the theory to the jury.

■ We note that, even if appellants had requested such an issue, any error in refusing to submit it to the jury would be harmless. A party seeking recission must prove he has restored, or offered to restore, the other party to the status quo ante. *Texas Co. v. State,* 154 Tex. 494, 281 S.W.2d 83, 91 (1955); *Whitfield v. Klein Independent School District,* 463 S.W.2d 232, 235 (Tex.Civ.App.—Houston [14th Dist.] 1971, writ ref'd n.r.e.), *cert. denied* 404 U.S. 882, 92 S.Ct. 204, 30 L.Ed.2d 163; *Guion v. Guion,* 475 S.W.2d 865, 869 (Tex. Civ.App.—Dallas 1971, writ ref'd n.r.e.). It is undisputed in the record that appellants have never returned, or offered to return, to John Furnace the money he paid in consideration for the sale of their stock. Nor have appellants offered any legally cognizable excuse for their failure to tender return the consideration they received. Accordingly, we would have to find the trial court properly granted appellees' motion for instructed verdict against appellant's

recission claim, and any error in failing to submit the mutual mistake issue would be harmless.

We note, also, that Special Issue 17 addresses the factual basis for appellants' mutual mistake theory, specifically the issue of whether John Furnace had not intended to purchase the beneficial interest of the persons selling the corporate stock to him.[2] The jury responded that they did not find from a preponderance of the evidence that John Furnace did not intend to purchase the beneficial interests in the trust. Therefore, appellants failed to prove an element essential to establishing their theory that a mutual mistake occurred.

Additionally, appellants' sufficiency challenges to the jury's answer to Special Issue 17 must fail. John Furnace testified he intended to purchase whatever benefits and liabilities came with the stock. The jury, as trier of the fact, could determine the weight and credibility to attach to his testimony. *Rego v. Brannon*, 682 S.W.2d at 680. Since the record in its entirety establishes the evidence is legally and factually sufficient to support the jury's answer, points of error seven, eight and nine are without merit and are overruled.

Appellants have waived any complaint concerning the failure to submit the theory of mutual mistake to the jury. Having made no attempt to return the consideration they received for the sale of their stock, appellants had no right to recission. These facts, coupled with the jury's answer to Special Issue 17, preclude our finding, as appellants request, that they are entitled to judgment on mutual mistake as a matter of law. Points of error numbers two and three are overruled.

Appellants next contend the jury's answers to their special issues on fraud, Special Issues 2, 3 and 4, conflict with the jury's answer to Special Issue 17. The issues and answers in question read as follows:

2. Special Issue No. 17 reads as follows: "Do you find from a preponderance of the evidence that at the time of the sale of the corporate stock in Manveltex, Inc., JOHN E. FURNACE did not

SPECIAL ISSUE NO. 2: Do you find from a preponderance of the evidence that JOHN E. FURNACE represented at the family meeting that he did not believe the stock sale would carry with it the mineral ownership interest in Manveltex Mineral Trust? Answer 'Yes' or 'No'. ANSWER: *YES*

If you have answered 'Yes' to Special Issue No. 2, then answer:

SPECIAL ISSUE NO. 3: Do you find from a preponderance of the evidence that at the time he made the representation, JOHN E. FURNACE believed the stock sale would carry with it the mineral ownership interest? Answer: 'Yes' or 'No'. ANSWER: *NO*

If you have answered 'No' to special Issue No. 3, then answer:

SPECIAL ISSUE NO. 4: Do you find from a preponderance of the evidence that at the time he made the representation, JOHN E. FURNACE had not formed such a belief as to whether or not the stock would carry with it the mineral ownership interest? Answer 'Yes' or 'No'. ANSWER: *NO*

SPECIAL ISSUE 17: Do you find from a preponderance of the evidence that at the time of the sale of the corporate stock in Manveltex, Inc., JOHN E. FURNACE did not intend to purchase the beneficial interest of the persons selling the corporate stock to him? ANSWER: *NO.*

The threshold question is whether the special issues address "the same material fact". *Bender v. Southern Pacific Transportation Co.*, 600 S.W.2d 257, 260 (Tex.1980). Even if the answers in question deal with the same material fact, we may not strike down jury answers on the basis of conflict "if there is any reasonable basis upon which they may be reconciled." *See Luna v. Southern Pacific Transportation Co.*, 724 S.W.2d 383, 384 (Tex.1987); *Bender*, 600 S.W.2d at 260. The presumption is always that the jurors intended their answers to be consistent. *Huber v. Ryan*,

intend to purchase the beneficial interest of the persons selling the corporate stock to him? ANSWER: *No.*"

688

627 S.W.2d 145, 146 (Tex.1982). This court must reconcile apparent conflicts in the jury's findings if reasonably possible in light of the pleadings and evidence, the manner of submission, and the other findings considered as a whole. *Bender,* 600 S.W.2d at 260 (citing *Ford v. Carpenter,* 147 Tex. 447, 216 S.W.2d 558, 562 (1949). Where issues submitted are susceptible to more than one reasonable construction, the construction that avoids a conflict in the answers is to be adopted. *Bender* 600 S.W.2d at 260.

Since Special Issue 17 was rather awkwardly worded in the negative, the exact import of the jury's answer is unclear. Appellants argue the jury found, in response to Special Issue 17, that John Furnace intended to purchase the beneficial interest of the persons selling the corporate stock to him. That construction could create a conflict with the findings in Special Issues 2 through 4. However, we do not agree that appellants' construction necessarily follows from the jury's "no" answer.

 Another reasonable construction of the issue and response is that the jury was simply indicating that they did not find, from a preponderance of the evidence, that John Furnace had not so intended. In other words, a refusal to find that he had not intended to purchase the beneficial interest is not the same as an affirmative finding that he had so intended. This second construction avoids a conflict. Since it is our duty to harmonize jury findings when possible, we adopt this construction. *Producers Chemical Co. v. McKay,* 366 S.W.2d 220, 224 (Tex.1963).

 Even if we accepted appellants interpretation, any resulting conflict would not be considered material. A conflict is material only if each of the irreconcilable findings, taken with the remainder of the verdict but excluding the other finding, would require a different judgment; one would require judgment for plaintiff and the other would require judgment for defendant. *Little Rock Furniture Mfg. v. Dunn,* 148 Tex. 197, 222 S.W.2d 985, 991 (1949). Appellants cannot meet this test. As our earlier discussion illustrated, appel-

lants have waived submission of the mutual mistake theory to the jury, and are not entitled to recission as a matter of law. Excluding the answers to Special Issues 2–4, and considering the answer to Special Issue 17 in light of the remainder of the verdict, appellants would not be entitled to judgment in their favor. Point of error number six must be overruled.

In appellants' final point of error, they contend the trial court erred in the manner in which it computed the percentage of ownership of each individual trust beneficiary. The jury found that interest in the trust was determined by ownership of the stock. Since Dubose owns one-hundred (100) of the twenty-four-hundred (2,400) outstanding shares of corporate stock, the trial court's award of a 1/24 interest in the trust is consistent with the language of the trust agreement.

Though appellants attempt to raise the issue of whether the corporation, by retaining eleven-hundred (1,100) shares as treasury stock, can be a beneficiary of the trust, they never presented the question to the trial court. Further, they offer no argument or authority on the issue. Thus, any error on that issue is waived. *Texaco v. Pennzoil,* 729 S.W.2d 768, 810 (Tex.App. —Houston [1st Dist.] 1987, writ ref'd n.r. e.), *cert. dismissed* 485 U.S. 994, 108 S.Ct. 1305, 99 L.Ed.2d 686 (1988).

By cross-point, appellees assert that the trial court erred in granting appellant Clinton Weeks Dubose's motion to disregard the jury verdict and by entering judgment in his favor. Appellees only complaint is that Dubose was not entitled to disaffirm his agreement to sell the stock without restoring, or offering to restore, the consideration received. Dubose filed a supplemental pleading the day before the jury began deliberations. His pleading sought to avoid the contract for the sale of his corporate stock since he was a minor at the time of the transaction. Dubose's pleading offered to restore the consideration he received for the sale. In granting judgment for Dubose, the trial court ordered the consideration returned to John Furnace from the money in registry of the court. Since

Dubose offered to return the consideration, and the court's judgment accomplished that result, we find appellee's cross-point to be without merit. *See Pope v. Darcey*, 667 S.W.2d 270, 274 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.).

The judgment of the trial court is affirmed.