Affirmed and Memorandum Opinion filed December 9, 2004









Affirmed
and Memorandum Opinion filed December 9, 2004.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-03-01207-CV

____________

 

DANETTE BYARD AND
CRAIG BYARD,
Appellants

 

V.

 

DR. FRED J.
BRESSLER,
INDIVIDUALLY AND D/B/A FRED J. BRESSLER, M.D., P.A., Appellee

 



 

On Appeal from the 11th
District Court

Harris County, Texas

Trial Court Cause No. 99-58496

 



 

M E M O R A N D U M   O P I N I O N

In this case, we must determine whether to
reverse and remand a jury trial because the evidence is legally and factually
insufficient to support certain jury questions and because of a conflict in the
jury’s answers.  For the reasons stated
below, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND








Danette Byard thought her lips looked thin
and decided to consult Dr. Fred Bressler, a board-certified facial plastic
surgeon, about increasing the fullness of her lips.  After consulting with him, she chose a surgical
procedure known as a lip advancement.  On
January 27, 1998, Dr. Bressler performed the procedure at St. Luke’s Episcopal
Hospital.  Mrs. Byard became dissatisfied
with her appearance, and several months after the procedure, Dr. Bressler
performed a laser treatment to improve the appearance of scars from the
incisions.  Still dissatisfied, in
November of 1999, Mrs. Byard and her husband Craig Byard sued Dr.
Bressler.  In their petition, the Byards
alleged claims for negligence and gross negligence, lack of informed consent,
fraud, and willful and intentional misrepresentation.

In August of 2003, the case was tried
before a jury.  At the trial, the central
issues were whether Dr. Bressler adequately informed Mrs. Byard of the risks
and hazards of the lip advancement procedure, particularly whether it could
result in scarring, and whether and to what extent she had visible scarring
from the procedure.  The issues were
strongly contested and, as discussed in greater detail below, conflicting
evidence was presented by the parties and their experts.  At the conclusion of the trial, the jury
found against Mrs. Byard on informed consent, negligence, gross negligence,
fraudulent misrepresentation and negligent misrepresentation.  The jury also awarded no damages for future
mental anguish and permanent disfigurement as a result of the surgery, but
awarded damages totaling $12,000.00 for past medical expenses and past physical
pain and mental anguish.  On September 8,
2003, the trial court entered a judgment that the Byards take nothing.  This appeal followed.

ANALYSIS OF ISSUES








In nine issues, the Byards contend (1) the
evidence is legally and factually insufficient to support the jury’s finding
that Bressler did not fail to disclose to Mrs. Byard the risks and hazards
inherent in the surgical procedure; (2) the evidence is legally and factually
insufficient to support the jury’s finding that Mrs. Byard did not suffer any
injury or damages as a proximate cause of Bressler’s failure to obtain her
informed consent; (3) the evidence is legally and factually insufficient to
support the jury’s finding that Dr. Bressler’s negligence, if any, did not
proximately cause Mrs. Byard’s alleged injuries; (4) the evidence is legally
and factually insufficient to support the jury’s finding that Mrs. Byard suffered
no disfigurement or other damages as a proximate cause of Dr. Bressler’s
negligent misrepresentation as to the risks or hazards of the lip enhancement
surgery; and (5) the jury’s finding of damages for physical pain and mental
anguish in the past and medical expenses in the past conflicts with the jury’s
other findings.  

We first address the informed consent
questions, followed by the negligence questions and, lastly, the Byards’
contention that the jury gave conflicting answers. 

I.        The
Informed Consent Questions

In issues one through four, the Byards
contend the evidence is legally and factually insufficient to support the
jury’s answers to Questions 1 and 3.  We
review the Byards’ legal and factual sufficiency of the evidence issues by
well-established standards.  See Dow
Chem. Co. v. Francis, 46 S.W.3d 237, 241–42 (Tex. 2001).

The jury answered “No” to Questions 1 and
3, which asked the following:

·                     
Did
Dr. Bressler fail to disclose to Mrs. Danette Byard such risks and hazards
inherent in the surgical procedure that could have influenced a reasonable
person in making a decision to give or withhold consent to such treatment?  

·                     
Did Mrs. Danette Byard suffer any injury or damages as a
proximate cause of Dr. Fred Bressler’s failure to obtain Mrs. Danette Byard’s
informed consent?[1]  

The parties agree that Dr. Bressler’s duty to Mrs.
Byard was the duty “to disclose all risks or hazards which could influence a
reasonable person in making a decision to consent to the procedure.”  See Peterson v. Shields, 652 S.W.2d
929, 931 (Tex. 1983); Knoll v. Neblett, 966 S.W.2d 622, 628 (Tex.
App.—Houston [14th Dist.] 1998, pet. denied).

 








A.      The
Legal Sufficiency Challenge to the Jury’s Findings on Informed Consent

The Byards’ legal sufficiency challenges
fail because some evidence supports the jury’s findings in Questions 1 and
3.  See Francis, 46 S.W.3d at
241.  The expert testimony established
that scarring was an inherent risk in the lip advancement procedure.  Dr. Bressler testified that he informed Mrs.
Byard of the risks and complications of the procedure, including scarring.  Dr. Bressler also testified that he drew on
paper and on Mrs. Byard where the incisions would be located.  His office notes reflected that he “answered”
all of Mrs. Byard’s “questions and concerns.” 
Dr. Bressler’s nurse, Becky Soria, also testified that she discussed the
procedure and the risk of scarring with Mrs. Byard.  Dr. Bressler testified that he obtained Mrs.
Byard’s informed consent verbally in the office and again at the hospital on
the day of the surgery.  Dr. Bressler’s
surgical notes document that he obtained Mrs. Byard’s “full informed
consent.”  Expert testimony was also
presented that Mrs. Byard’s lip advancement procedure was successful and
enhanced her appearance.  Because we find
some evidence supports the jury’s findings, we need not examine the entire
record to determine if the contrary propositions are established as a matter of
law.  Id. at 241–42.

B.      The
Factual Sufficiency Challenge to the Jury’s Findings on Informed Consent

We next consider the Byards’ factual
sufficiency challenges to Questions 1 and 3. 
Mrs. Byard testified that she went to Dr. Bressler because of his
advertisements in magazines,[2]
including one referencing “Amazing changes. 
Lips enhanced by undetectable lip advancement.”  








The meaning of the term “undetectable” was
disputed at trial.  Mrs. Byard testified
that she understood “undetectable” to mean that it could not be seen and nobody
would know.  Mrs. Byard’s expert, Dr.
Swartz, thought the ad was “unsupportable” because “anytime we put a knife on
someone’s skin, it’s going to leave a scar and that’s going to be a detectable
situation, even in the best of circumstances.” 
In contrast, Dr. Bressler defined “undetectable” to mean undetectable to
the casual observer.  He also denied that
he told Mrs. Byard she would have “invisible scars.”[3]  Dr. Bressler’s expert, Dr. Biggs, similarly
testified that “undetectable” means that in a social circumstance, it is not
seen or noticed, and does not mean “invisible.”

In addition to relying on Dr. Bressler’s
advertisements, Mrs. Byard testified that Dr. Bressler assured her scarring
would not occur, and he guaranteed she would have no scars.  Mrs. Byard also testified that she was told
the incisions would be made inside the mouth, and denied that Dr. Bressler
marked on her where he would make the incisions.  She testified that she would not have had the
surgery if Dr. Bressler had warned her of the risk of permanent disfigurement
or the necessity for future surgery.  

However, the jury could have relied on
evidence it decided conflicted with this testimony.  Mrs. Byard testified that she had other cosmetic
and surgical procedures before the lip advancement—a breast augmentation
surgery, rhinoplasty, and collagen injections to her lips—and admitted that a
doctor cannot guarantee results.  She
also chose the lip advancement procedure after rejecting the other options of
more collagen injections or lip implants. 
The jury could have determined that she was knowledgeable about cosmetic
procedures and understood the risk of scarring from a surgical procedure.  She was awake for the lip advancement surgery
and after it was over she never mentioned that she thought the incisions would
be made inside the mouth.  In addition,
when she testified at trial that Dr. Bressler did not draw the location of the
incisions on her lips and on paper, she contradicted her earlier deposition
testimony. 








The Byards’ expert, Dr. Swartz, testified
that Dr. Bressler failed to follow the standard of care expected of a
reasonable and prudent plastic surgeon, and that Mrs. Byard suffered some
permanent injury.  He also testified that
he could see her scars from a couple of feet away, and he thinks all scars are
disfiguring.  However, he also testified
that if a doctor explains the risks and complications of the surgery and discloses
that scarring is a possibility, then he is not below the standard of care.  He went on to state that, if the jury
believed that Dr. Bressler told Mrs. Byard that scarring was a potential risk,
then they should believe he was not negligent. 
Dr. Bressler’s expert, Dr. Biggs, testified that Dr. Bressler’s conduct
did not fall below the standard of care and that, based on his review of the
documents and his interviews with Dr. Bressler, Becky Soria, and Mrs. Byard,
Dr. Bressler obtained a full and informed consent from Mrs. Byard. 

Mrs. Byard testified that the
disfigurement from her lips was “completely humiliating” and she felt that
people talked about her behind her back. 
But again, the record contained conflicting evidence.  Psychiatric records in evidence reflected
that she had suffered from depression for years and that some of the feelings
she described predated the lip advancement procedure.  These records contain no complaints about Dr.
Bressler, the lip advancement procedure, or her feelings about them.  Mrs. Byard also testified that she was
self-conscious and could not go out in public. 
Yet, she appeared on a news broadcast after the procedure.  She also consulted Dr. Bressler about
additional cosmetic surgery on her nose and, at some point after the procedure,
wrote Dr. Bressler a note in which she stated that she was “loving [her] new
and improved lush lips.”[4]  She also admitted that she was happy with her
appearance, but maintained that she is “disfigured”—although not grossly so.








Other testimony on the visibility of Mrs.
Byard’s scars was conflicting.  Her
expert, Dr. Swartz, testified that the scars were visible to a casual observer
and in a social setting.  Conversely, Dr.
Bressler’s expert, Dr. Biggs, testified he needed a magnifying glass to see the
scars.  He also testified that she was
not disfigured.  Dr. Biggs, Dr. Bressler,
and Nurse Soria all testified they thought Mrs. Byard’s lip advancement
procedure was successful.  Of course, the
jury was also able to evaluate Mrs. Byard’s claims and the witnesses’
testimony.

In connection with both their informed
consent and misrepresentation claims, the Byards rely heavily on the St. Luke’s
Episcopal Hospital consent form Mrs. Byard signed on the day of the
surgery.  The hospital’s form included a
broad and general list of risks, and a section in which space was provided to
list the risks and hazards of the particular procedure.  No risks were listed in the spaces provided
when Mrs. Byard signed the form.  The
Byards contend that the failure to list the risks of the lip advancement
procedure demonstrates that Mrs. Byard was not informed of the procedure’s
risks.  Additionally, in connection with
their misrepresentation claim, Mrs. Byard contends she relied on the blank form
as a representation that the procedure had no risks.  At trial, Dr. Swartz testified that the
hospital consent form was inadequate to advise Mrs. Byard of the risks of the
surgery.  He also testified that it
should have included potential asymmetry, bleeding, infection, widened scars,
recurrence of the deformity, need for future surgery, numbness, and
paralysis.  The Byards contend this
testimony is undisputed and Dr. Bressler did not testify that he warned of any
of those risks other than scarring.  








However, Dr. Bressler did respond.  He testified that he fully informed Mrs.
Byard of the risks and obtained her consent verbally.[5]  See Knoll, 966 S.W.2d at 628–29 (holding
that written consent form was not required when statute did not specify
disclosures for a particular procedure). 
Regarding the warning Dr. Bressler should have given, Dr. Swartz
testified that if the jury believed Dr. Bressler and his nurse told Mrs. Byard
that scarring was a potential risk, then they should find that Dr. Bressler was
not negligent.  Additionally, the consent
form Mrs. Byard signed recited the following: “I (We) have been given an
opportunity to ask questions about my condition, . . . the procedures to be
used, and the risks and hazards involved, and I (we) believe that I (we) have
sufficient information to give this informed consent.”  Mrs. Byard admitted this was a true statement
on the day she had her surgery.  The jury
was able to look at all of the testimony and draw its own conclusions.

The jury is the exclusive judge of the
credibility of the witnesses and the weight to be given their testimony.  Benoit v. Wilson, 150 Tex. 273, 239
S.W.2d 792, 796 (1951).  As the fact
finder, the jury may resolve conflicts or inconsistencies in any witness’s
testimony, believe or disbelieve a witness, or accept lay over expert
testimony.  McGalliard v. Kuhlmann,
722 S.W.2d 694, 697 (Tex. 1986).  Here,
the jury was entitled to resolve conflicts in the testimony and could have
reasonably reached the adverse findings in Questions 1 and 3.  The Byards have not shown, and the record
does not support, that these adverse findings are so against the great weight and
preponderance of the evidence that they are clearly wrong and unjust.  See Francis, 46 S.W.3d at 242.[6]

We overrule issues one through four.

II.       The
Negligence and Negligent Misrepresentation Questions

In issues five through eight, the Byards
contend the evidence is legally and factually insufficient to support the
jury’s negative answers to Questions 4 and 7.[7]  Questions 4 and 7 asked the following:








·                     
Did
the negligence, if any, of Dr. Fred Bressler proximately cause Danette Byard’s
alleged injuries?  

·                     
Do you find that Danette Byard suffered disfigurement or
other damages as a proximate cause of Dr. Bressler’s ‘negligent
misrepresentation[’] as to the risks or hazards of the lip enhancement surgery?

We address each in turn.

A.      The
Jury’s Negative Finding on Negligence

We first consider the legal and factual
sufficiency of the evidence supporting the jury’s answer to Question 4.  Dr. Biggs testified that the lip advancement
procedure, while not one he has performed in the “exact same way” as Dr.
Bressler, was a recognized procedure, and that Dr. Bressler correctly performed
it.  He also testified, as did Dr.
Bressler, that the surgery could not be done inside the mouth.  Additionally, he opined that Dr. Bressler
caused Mrs. Byard no damages or disfigurement, and that the surgery had an
“excellent result” that enhanced Mrs. Byard’s appearance.  Other evidence consistent with these opinions
was also presented, some of which we have already outlined above.

The Byards contend, however, that Dr.
Biggs and Dr. Bressler were impeached by “critical testimony as to the issue of
negligence.”  They argue that Dr. Swartz’s
testimony was credible that the surgery Dr. Bressler performed has been
“condemned” by plastic surgeons as causing extensive scarring, and was
supported by medical authority.  The
Byards contend that Dr. Biggs “admitted” that an article Dr. Swartz relied on
was “authoritative in the position that the surgery should not be performed on
the outside of the lips.”  The Byards
also emphasize the Dr. Biggs has not performed the lip advancement procedure as
Dr. Bressler has done.  In addition, they
point to Dr. Swartz’s testimony that Bressler did not correctly perform the
surgery, and that anyone performing this surgery would fall below the standard
of care because it should not be performed. 









However, the jury was in the best position
to compare the credentials of the doctors and determine whether Dr. Swartz was
more or less credible than Dr. Biggs and Dr. Bressler.  Moreover, we disagree with the Byards’
characterization of Dr. Biggs’s testimony regarding the article by Dr.
Wilkinson.  Far from admitting it was
authoritative, Dr. Biggs testified that the article (which was not put in
evidence) was not a peer-reviewed article, but merely reflected the author’s
opinion of the surgery.[8]  Further, although Dr. Swartz characterized
lip advancement as a “silly operation,” he admitted that other licensed doctors
perform the surgery and disagree with his opinion of it.  Dr. Swartz also described Dr. Biggs’s
reputation and qualifications as “excellent.” 


We have carefully reviewed all of the
evidence presented, and we hold that it does not demonstrate that Dr. Bressler
was negligent as a matter of law. 
Moreover, the evidence is not so against the great weight and
preponderance of the evidence that it is clearly wrong and unjust.

We overrule issues five and six.

B.      Negligent
Misrepresentation

In their seventh and eighth issues, the
Byards contend the evidence is legally and factually insufficient to support
the jury’s answer to Question 7, the negligent misrepresentation question.  They argue that the evidence “clearly showed”
that Dr. Bressler negligently misrepresented that the surgery would not cause
any scarring, and he admitted he did not tell Mrs. Byard that the scars may
require other surgery.  They also note
that Dr. Bressler testified that, while he shows patients pictures of other
patients who have had good results, he does not show them the pictures of
patients who have had bad results.  The
Byards also rely on the advertisement of “undetectable” lip advancement
discussed above.








In response, Dr. Bressler argues that
Question 7 merely attempts to recast the Byards’ negligence claim, because at
its core it is a claims that Dr. Bressler deviated from a standard of care in
performing the lip advancement. 
Therefore, he urges that the Byards should not be allowed to recover on
this basis.  Dr. Bressler objected to the
submission of this question at trial and the trial court overruled the
objection.  We do not need to address
that issue because, even if we assume that the question was properly submitted,
we hold that the evidence was legally and factually sufficient to support the
jury’s answer.

Question 7 asked whether Mrs. Byard
suffered disfigurement or other damages as a proximate cause of Dr. Bressler’s
negligent misrepresentation “as to the risks or hazards of the lip enhancement
surgery.”  The question included an
instruction that “negligent misrepresentation” occurs when 

(1) a physician
makes a representation to a patient in the course of the physician’s business,
or in [a] transaction in which the physician has a pecuniary interest, (2) the
physician supplied false information for the guidance of a patient, (3) the
physician did not exercise reasonable care or competence in obtaining or
communicating the information, and (4) the patient suffered damages by
justifiably relying upon the misrepresentation.

The Byards rely upon much of the same
evidence and argument as they presented in support of their issues on the
informed consent questions.  As discussed
above, the Byards contend that Mrs. Byard relied on Dr. Bressler’s
advertisements of “undetectable” lip advancement, his guarantee that she would
not have scarring, and the hospital consent form that listed no specific risks
of the procedure.  We have previously
outlined much of the evidence presented in discussing the jury’s answers to
Questions 1 and 3.  The meaning of
“undetectable” was a contested issue, and the Byards’ own counsel pointed out
at trial that the dictionary does not define “undetectable.”  The jury heard evidence from the parties and
their experts and was free to determine the word’s meaning in the context of
the evidence presented.  The jury
could also have determined that Mrs. Byard did not rely on the advertisements,
but chose Dr. Bressler from the “Yellow Pages” as his records showed.








The jury was also able to consider the
witnesses’ credibility concerning what Dr. Bressler did or did not tell Mrs.
Byard about the surgery, and determined that he did not fail to disclose the
inherent risks or hazards of the surgery. 
The jury also could have determined that Mrs. Byard gave informed
consent verbally, and could have discounted the hospital consent form.

Regarding Dr. Bressler’s practice of
showing photographs of good results and not bad results, the Byards do not
explain how this constitutes a negligent misrepresentation.  Dr. Bressler explained that he shows his patients
photographs of typical results, and he does not show pictures of bad results
because such results are not typical and therefore are not representative of
his work.  Moreover, Mrs. Byard denied
seeing any photographs of other patients; therefore, she could not have been misled
by photographs of only good results.

We find, based on our review of the
evidence, that legally and factually sufficient evidence supports the jury’s
answer to Question 7.

We overrule issues seven and eight.

III.      The
Damages Question

In their ninth issue, the Byards contend
the jury’s damages findings in Question 8 conflict with the jury’s negative
liability findings in Questions 1 through 7. 
In Question 8, the jury found that Mrs. Byard suffered damages of
$6,000.00 for physical pain and mental anguish in the past and $6,000.00 for
medical expenses in the past as a result of the lip enhancement surgery.  The Byards contend this conflict is
irreconcilable and therefore the judgment should be reversed and the case
remanded for a new trial.  








In reviewing the jury findings for
conflict, the threshold question is whether the findings address the same
material fact.  See Bender v. S. Pac.
Transp. Co., 600 S.W.2d 257, 260 (Tex. 1980).  This court may not strike down allegedly
conflicting jury answers if any reasonable basis exists upon which they can be
reconciled.  Id.  We must reconcile apparent conflicts in the
jury's findings if reasonably possible in light of the pleadings and evidence,
the manner of submission, and the other findings considered as a whole.  Id. 


To require reversal, a conflict between
jury answers “must be such that one answer would establish a cause of action or
defense, while the other would destroy it.” 
Little Rock Furniture Mfg. Co. v. Dunn, 148 Tex. 197, 222 S.W.2d
985, 991 (1949); Brown v. Armstrong, 713 S.W.2d 725, 728–29 (Tex.
App.—Houston [14th Dist.] 1986, writ ref’d n.r.e.).  The test is whether taking the finding alone
in the one instance, a judgment should be entered in favor of the plaintiff;
and taking it alone in the other, judgment should be entered in favor of the
defendant.  Little Rock Furniture,
222 S.W.2d at 991.  To apply this test,
we consider each of the answers claimed to be in conflict, and, if one of the
answers would require a judgment in favor of the plaintiff and the other would
require a judgment in favor of the defendant, then the answers are fatally
inconsistent.  Id.  The party seeking to set aside the verdict on
the ground of conflict must be able to point out that one of the conflicting
answers of the jury necessarily requires the entry of a judgment different from
that which the court has entered.  Id.  

Here, the Byards cannot argue that the
jury’s findings show that Mrs. Byard was injured by any wrongdoing by Dr. Bressler
or that one answer establishes a cause of action or defense while another would
destroy it.  The amounts simply reflect
that the jury assigned dollar amounts to the expenses Mrs. Byard incurred and
her pain and suffering as a result of the surgery.  Therefore, the Byards cannot demonstrate a
fatal conflict requiring us to set aside the judgment.

Additionally, the jury’s answers on
liability, which we have held are supported by legally and factually sufficient
evidence, render immaterial the jury’s answers to the damages question.  See, e.g., Brown, 713 S.W.2d at 729; Yarbrough
v. Helmerich and Payne, Inc., 616 S.W.2d 444, 445 (Tex. App.—Houston [14th
Dist.] 1981, no writ).  Therefore, no
conflict exists between Question 8 and Questions 1 through 7.  See Brown, 713 S.W.2d at 729.  We overrule the Byards’ ninth issue.








CONCLUSION

We hold that the evidence is legally and
factually sufficient to support the jury’s answers to the questions on informed
consent, negligence, and negligent misrepresentation.  We also hold that, because the jury found Dr.
Bressler was not liable, the jury’s answers to the damages question was immaterial.  

The trial court’s
judgment is affirmed.

 

 

 

 

 

/s/      Wanda McKee Fowler

Justice

 

 

 

 

Judgment
rendered and Memorandum Opinion filed December 9, 2004.

Panel
consists of Chief Justice Hedges and Justices Fowler and Seymore.











[1]  Question 2 was
conditioned on a “Yes” answer to Question 1, and asked “Would a reasonable
person have refused such a surgical procedure if those risks and hazards had
been disclosed?”  Question 2 is not a
subject of this appeal.





[2]  Dr. Bressler’s
records indicate Mrs. Byard’s referral source was the “Yellow Pages.” 





[3]  The Byards
repeatedly rely on testimony from the original volume of the reporter’s record,
entitled “Statement of Facts,” which reflects that Dr. Bressler said “I told
the patient and showed her the instrument in a safe manner that it would be in
an undetectable fashion—invisible scars.” 
However, the Statement of Facts was later corrected, and the corrected
version reflects that Dr. Bressler testified as follows: “I told the patient
that we could do the surgery in a safe manner, that it would be in an
undetectable fashion, not invisible scars.” 






[4]  Mrs. Byard’s explanation of the
note was that she wrote it within the first week after the surgery, even though
her lips were still swollen and sutured, because she “anticipated those results
were guaranteed.”  





[5]  Dr. Bressler
testified that when he does a procedure in the office he has the patient sign a
consent form that he uses.  Consequently,
when he later treated Mrs. Byard in his office with a laser to reduce the
appearance of the scars, he obtained a written consent from her.  He also testified he did not look at the
hospital’s consent form, because by that time the consent had already been
handled in the office.





[6]  The Byards also contend that the
jury’s negative finding in answer to Question 1 conflicts with its answer to
Question 3 because Question 3 presumes that Dr. Bressler failed to obtain Mrs.
Byard’s informed consent.  However, we do
not interpret Question 3 as the Byards do. 
The jury found in Question 1 that Dr. Bressler did not fail to disclose
to Mrs. Byard the inherent risks or hazards of the procedure.  Consistent with this finding, the jury found
in Question 3 that no damages could have resulted from any failure on Dr.
Bressler’s part to obtain Mrs. Byard’s informed consent.  Therefore, we find that the jury’s answers to
Questions 1 and 3 do not conflict.





[7]  The Byards do
not challenge the jury’s findings in Questions 5 and 6.  Question 5 asked, “Do you find that Danette
Byard suffered permanent disfigurement and other damages as a proximate cause
of the gross negligence of Dr. Fred Bressler, if any, in performing the lip
enhancement surgery in question?”  Question
6 asked, “Do you find that Dr. Fred Bressler fraudulently represented the
nature of the lip enhancement surgery and the risks of permanent disfigurement
and other risks associated with the surgery?”





[8]  The Byards
also misrepresent a portion of Dr. Biggs’s testimony, presenting it to appear
as though Dr. Biggs is agreeing with and explaining a portion of Dr.
Wilkinson’s article.  However, the
transcript reveals that a portion of the Byards’ cross-examination of Dr. Biggs
was omitted.  Read in context, the testimony
shows that Dr. Biggs was actually just reading from Dr. Wilkinson’s article as
the Byards’ counsel had instructed. 
During this cross-examination, Dr. Biggs also attempted to explain to
counsel that the operation Dr. Wilkinson was describing was a different
procedure than the one Dr. Bressler did.