**CRESSMAN TUBULAR PRODUCTS CORPORATION, Appellant/Cross–Appellee,**

v.

**KURT WISEMAN OIL & GAS, LTD. and Escondido Petroleum, Appellees/Cross–Appellants,**

v.

**Sepco Tubular, Inc. and United Casing, Inc., Cross–Appellees.**

No. 14–08–01039–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Sept. 23, 2010.

Jack McKinley, Robert L. Ramey, Steven D. Naumann, Houston, for appellants.

Rick Lee Oldenettel, Timothy Ray Hightower, Alan R. Scheinthal, Houston, Debora Beck Alsup, Austin, Ben K. Baron, Joseph Edward Byrne, Dallas, for appellees.

Panel consists of Justices ANDERSON, BOYCE, and CHRISTOPHER.

## OPINION

TRACY CHRISTOPHER, Justice.

This is a double appeal of a case in which multiple theories of liability were asserted against four defendants for damages caused by the sale of goods for use in an oil well. After the defendant found liable for 99% of the plaintiffs' damages filed for bankruptcy protection, the trial court severed those claims from this case and entered judgment requiring all of the plaintiffs' damages and attorney's fees to be paid by the defendant that the jury found to be 1% responsible. On appeal, that defendant contends that all of the plaintiffs' damages sound in tort, and thus, the trial court erred in disregarding a jury finding allocating responsibility for breach of an express warranty and in awarding attorney's fees to the plaintiffs. The plaintiffs argue that all of their damages sound in contract, and they contend that the trial court erred in failing to disregard the jury's finding allocating responsibility for breach of implied warranties, failing to hold the defendants jointly and severally liable, and failing to include the jury's breach-of-contract finding as an alternative basis for the judgment against one of the defendants. We conclude that the plaintiffs' express-warranty claim against appellant sounds in contract, but their implied-warranty claims against the cross-appellees sound in tort; thus, the trial court did not err in disregarding the proportionate-responsibility finding as to the express warranty claim against one defendant and in refusing to disregard a similar finding as to the implied warranty claims against two other defendants. Finally, we further conclude that the trial court did not err in refusing to include alternative bases for its judgment, and we affirm the trial court's judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Kurt Wiseman is the owner of Kurt Wiseman Oil & Gas, Ltd., which owns a working interest in the Gerdes No. 1 well in Lavaca County, Texas. He also is the president of Escondido Petroleum, which is the well operator. We refer to all three collectively as "Wiseman."

The Gerdes No. 1 well had been shut in for some time and the existing casing was damaged, but Wiseman planned to perform a fracture stimulation to return the well to production. In this procedure, the rock surrounding the oil reservoir is fractured by fluid mixed with increasing concentrations of proppant pumped at high pressure into the well down a tubing string, which consists of joints of pipe connected to one another by couplings. The proppant holds the fracture open to allow oil and gas to drain into the well bore. The proppant and fluids are then removed and oil can be produced through the same tubing string.

Wiseman ordered the tubing string from Cressman Tubular Products Corporation and specified that the components were to be API P110, which means that they were to meet a particular toughness standard set by the American Petroleum Institute. Cressman ordered the tubing string from

Sepco Tublar, Inc.; Sepco ordered the couplings from United Casing, Inc.; and United Casing bought the couplings from the manufacturer, Colaco Tubular Services, Inc. When delivered by Colaco, the couplings had been painted white, which in industry custom signified that they met the API P110 standard. United Casing sent the couplings to Sepco, and Sepco attached the couplings to the joints of pipe before shipping them to Cressman, who then shipped them Wiseman.

## A. The Tubing String Failures

The joints of pipe were assembled into a tubing string and used in the planned fracture stimulation in January 2004. Because the casing in the well narrowed from 7 5/8 inches to 5 inches in diameter, wider pipe joints were used in the upper part of the tubing string and narrower pipe was used in the lower part.

After about sixty percent of the fluid and twenty percent of the proppant had been pumped down the well, the tubing string failed and there was a sudden dramatic loss of pressure. The fracture stimulation could not be completed, and mud entered the formation so that a mixture of fracture fluid, proppant, and mud were mixed with the condensate that flowed from the well. As Kurt Wiseman later testified, "The mud went into the fracture, made it to the point where the well was actually showing skin damage, which is damage near the well bore, not allowing it to flow. So, yes, the mud was obviously damaging [the formation]." Wiseman's expert Richard Klem explained at trial that the "skin damage" from the mud or "positive skin" meant that the perforations in the well casing were blocked.

Wiseman hired consultants who were unable to find a physical obstruction to the tubing string, and eventually, a well service company was able to circulate the mud in the well[1] and remove part of the string, which was found to have lost a coupling from its upper, wider part. The coupling could not be found, and as Kurt Wiseman later testified, he was concerned that it might have fallen to the area where the casing and tubing string narrowed such that removing the entire tubing string could allow the coupling to fall deeper into the well bore and "junk" the well,[2] potentially rendering it unusable. Wiseman decided to leave the narrower part of the tubing string in place, and reattached the wider portion of the string to it using an "overshot packoff."[3] Fluids and mud were washed out from the well in sufficient quantities for the well to begin producing oil.

Production stopped in May 2004 when Wiseman again found mud inside the tubing string. When a crew attempted to remove it, the tubing string parted and two couplings were found to have split from the wider portion of the string. Wiseman was able to quickly obtain only a

1. The "circulation of mud" is defined as "[t]he return to the surface of a portion of the drilling [mud]...." HOWARD R. WILLIAMS & CHARLES J. MEYERS, MANUAL OF OIL & GAS TERMS 139 (Patrick H. Martin & Bruce M. Kramer eds., 14th ed. 2009) (1957).

2. "The term 'junk' is a term of art used in the oil and gas industry to refer to 'non-drillable material such as steel or iron, in [a] well bore.'" *Exxon Corp. v. Emerald Oil & Gas Co.*, (quoting *Tarrant County Water Control & Improvement Dist. No. One v. Fullwood*, 963 S.W.2d 60, 67 (Tex.1998) (per curiam)). The term also may be used as a verb.

3. An "overshot" is "a fishing tool used to recover lost pipe in a drilled well." *Webster's Third New Int'l Dictionary*, 1610 (1993). A "packer" is "a device for packing the space between the wall of an oil well and the pipe or between two strings of pipe." *Id.* at 1618.

dozen couplings, and as explained at trial, Wiseman would lose its lease if production was interrupted for more than thirty or sixty days. Wiseman therefore replaced the split couplings and those adjacent to them, and the well was returned to production. The split couplings and those that had been replaced were tested, and it was found that the split couplings did not meet API P110 standards.

In January 2005, the well again stopped producing, and once more Wiseman found that a coupling had failed and mud had entered the tubing string. This time, he was able to obtain enough couplings to replace all of the approximately 300 couplings from the wider portion of the tubing string to the overshot packoff. In 2006, the well was no longer producing enough gas to lift the oil condensate, and Wiseman began using a gas lift to raise the oil from the well. Wiseman's lease was secured by a second producing well on the same property in 2007, and he was able to interrupt production on the Gerdes No. 1 well to remove the overshot packing, replace the entire tubing string, and perform a second fracture stimulation without jeopardizing the lease of the property. After the second fracture stimulation, the well produced enough gas to allow Wiseman to discontinue the use of the gas lift.

## B. The Trial

Wiseman sued Cressman and Sepco in September 2005, and added United Casing and Colaco as defendants in 2006. Against each of the defendants, Wiseman asserted claims for manufacturing defects, negligence, gross negligence, violations of the Deceptive Trade Practices–Consumer Protection Act ("DTPA"), and breaches of contract, express warranties, and the implied

warranties of merchantability and fitness for a particular purpose. Cressman, Sepco, and United Casing asserted cross-claims for contribution and indemnity from Colaco.[4] Wiseman introduced evidence that if the couplings had not failed, the fracture stimulation would have been completed when it was initially attempted in 2004, and it would not have been necessary to incur expenses for removing the tubing string, clearing mud from the well bore, transporting mud from the site, repairing various pieces of production equipment, washing transport trucks, watching the well, testing the well bore and the couplings, replacing damaged or missing couplings, using a gas lift, and performing a second fracture stimulation.

The trial court submitted jury questions on Wiseman's express warranty, implied warranty, DTPA, and products liability theories of liability against each defendant, and submitted questions concerning Wiseman's breach-of-contract claim against Cressman.

As relevant to this appeal, the jury was asked whether any defendant made an express warranty to Wiseman that became the basis of the bargain; the jury answered in the affirmative only as to Cressman and Colaco. The jury also was asked if any defendant breached the implied warranty of merchantability. The jury answered "yes" as to each defendant and allocated responsibility for damages resulting from the breach of implied warranty as follows: 99 percent to Colaco, 1% to Cressman, and 0% to United Casing and Sepco. The jury found that Wiseman sustained damages of $548,187 for breach of this implied warranty.

4. Each also asserted claims against any upstream sellers, but these claims were not presented to the jury.

In addition to separate questions addressing express and implied warranties, the trial court also submitted another question that combined both theories. In the combined question, the jury was asked to indicate with a single "yes" or "no" answer whether any defendant failed to comply with an express warranty; an implied warranty of merchantability; or an implied warranty of fitness for a particular purpose. The jury answered in the affirmative as to each defendant; found that Wiseman sustained damages in the amount of $548,187; and again allocated 99% of the responsibility for such damages to Colaco and 1% to Cressman.

Regarding Wiseman's breach-of-contract claim against Cressman, the jury found that Cressman failed to comply with the terms of its agreement, causing Wiseman $5,481 in damages.

Finally, the jury found that a reasonable attorney's fee for preparation and trial of Wiseman's DTPA and contract claims was $219,274.[5]

## C. Post–Verdict Motions and Judgment

After the jury rendered its verdict and was discharged, Colaco filed for bankruptcy and the claims against it were severed from the case. Wiseman moved the trial court to disregard the jury's proportionate-responsibility finding associated with the question that combined liability for breach of express and implied warranties. Wiseman also asked the trial court to disregard the jury's proportionate-responsibility finding associated with the question in which the jury was asked to determine liability for breach of the implied warranty of merchantability alone. In addition, Wiseman argued that the jury failed to

answer the question concerning damages for Cressman's breach of contract "consistently with its other damages findings" and asked the trial court to disregard that finding and enter judgment against Cressman for $548,187 for breach of contract, together with attorney's fees, interest, and costs. The trial court granted the motion only in disregarding the proportionate-responsibility finding associated with Wiseman's combined express and implied warranty theories, and ultimately rendered judgment holding Cressman solely liable for $548,187 in actual damages and $219,274 in attorney's fees. Wiseman's motion to modify the judgment was overruled by operation of law, and this appeal ensued.

## II. Issues Presented

Cressman argues that Wiseman's damages sound in tort, and thus, the trial court erred in disregarding the jury's finding allocating responsibility for breach of an express warranty. Cressman further asks that if we sustain its first issue, we reverse the award of attorney's fees.

Wiseman brings a cross-appeal against Cressman, Sepco, and United, Casing, challenging the trial court's failure to disregard the jury's finding allocating responsibility for breach of implied warranties and hold these defendants jointly and severally liable. In a second cross-issue, Wiseman argues that the trial court further erred by failing to increase the damages that the jury found were caused by Cressman's breach of contract and enter judgment on the alternative basis of breach of contract.

## III. Standard of Review

A trial court may disregard a jury finding only if it is unsupported by

---

5. The jury found that no attorney's fees would be necessary in the event of an appeal, and this finding was not challenged. The jury's answers to the remaining questions have not been challenged on appeal.

evidence or if the issue is immaterial. *Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 157 (Tex.1994). A question is immaterial when it should not have been submitted or calls for a finding beyond the province of the jury, such as a question of law. *Se. Pipe Line Co. v. Tichacek*, 997 S.W.2d 166, 172 (Tex.1999). A properly-submitted question can be rendered immaterial by other findings. *Id.*

## IV. ANALYSIS

The parties do not dispute that the coupling failures caused Wiseman damages of $548,187 or that $219,274 is a reasonable fee for the necessary services of the plaintiffs' attorneys. They all assert that tort claims are subject to proportionate responsibility and claims sounding in contract are not. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 33.002(a)(1) (Vernon 2008) (providing that proportionate responsibility applies to "any cause of action based on tort in which a defendant, settling person, or responsible third party is found responsible for a percentage of the harm for which relief is sought"). The parties differ in the importance they attach to the particular theory of liability asserted and to the character of the damages.

Cressman contends that courts determine whether an express-warranty claim sounds in tort or contract by examining the nature of the damages, and argues that the damages found by the jury to have been caused by Cressman's breach of an express warranty sound in tort because the coupling failures damaged property other than the tubing string. Wiseman responds that claims for breach of express warranty sound in contract as a matter of law, and in any event, the damages at issue were contractual because Wiseman did not seek to recover for damage to the formation.

Regarding Wiseman's cross-appeal, the parties agree that breach of an implied warranty can sound in tort or contract, depending on the nature of the damages. Wiseman contends that the damages found by the jury for the defendants' breaches of implied warranties sound in contract because Wiseman sought damages only for economic loss, and thus, the damages awarded for this claim are not subject to the proportionate-responsibility statute. United Casing and Sepco assert that Wiseman sought and was awarded compensation for damage to property other than the tubing string that was the subject of Wiseman's contract with Cressman, and thus, the claim sounds in tort and the proportionate-responsibility statute applies.

### A. Cressman's Breach of an Express Warranty

The trial court partially granted Wiseman's motion to disregard the jury's proportionate-responsibility findings, and Cressman challenges that ruling on both procedural and substantive grounds. As a threshold matter, we address Cressman's contention that Wiseman waived any right to the relief it requested, or that it was otherwise estopped from challenging the application of the proportionate-responsibility statute.

Cressman points out that the jury was instructed to allocate responsibility for Wiseman's damages if it found that more than one defendant breached a warranty. According to Cressman, it relied to its detriment on Wiseman's failure to object to this portion of the jury charge, and thus, we should hold that Wiseman waived any challenge to the application of the proportionate-responsibility statute or is estopped from raising such a challenge. We disagree. Whether the proportionate-responsibility statute applies is a question of law. *Reveille Trucking, Inc. v. Loera*

*Customs Brokerage, Inc.*, No. 13–08–00127–CV, 2010 WL 2638494, at *3 (Tex. App.-Corpus Christi June 29, 2010, no pet. h.) (mem. op.) As a purely legal question, it is analogous to a legal sufficiency challenge that can be raised post-verdict. *Cf. Holland v. Wal–Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex.1999) (per curiam) (holding that the availability of attorney's fees is a purely legal question, and thus, may be challenged post-verdict, even by the party that proposed submitting the matter to the jury). Cressman also asserts that Wiseman waived error in that, before the jury was discharged, Wiseman failed to complain that the jury returned an inconsistent verdict in allocating responsibility for the damages caused by the breach of warranty. Because Cressman has not identified the finding that allegedly conflicts with this answer, this argument is waived. TEX.R.APP. P. 38.1(i).

Turning to the substantive arguments, Cressman contends that breach of an express warranty sounds in tort when the breach causes damage to or loss of use of property other than the property that is the subject of the contract. The Texas Supreme Court, however, recently held that express-warranty claims sound in contract. *Med. City Dallas, Ltd. v. Carlisle Corp.*, 251 S.W.3d 55, 57 (Tex.2008). In reaching this result, the court in *Carlisle* did not base its holding on the type of the damages sought or sustained. *See id.* at 61 ("[T]he damages recoverable here *support our conclusion* that the claim is based in contract. . . . Medical City's damages were economic injuries based on the defective roof, *further demonstrating* that its recovery is contract-based.") (emphasis added). To the contrary, the court spoke in broad terms in holding that "a claim based on an express warranty is, in essence, a contract action." *Id.* at 58.

■ We conclude that the trial court did not err in granting Wiseman's request to disregard the jury's proportionate-responsibility finding in connection with Cressman's breach of an express warranty. We therefore overrule Cressman's first issue and do not reach its second issue.

**B. Sepco and United Casing's Breach of Implied Warranties**

On appeal, Wiseman has not challenged the trial court's failure to render judgment against Sepco and United Casing based on any theory other than breach of an implied warranty. Moreover, Wiseman has never argued that the jury's finding that Sepco and United Casing caused damage to Wiseman by breaching implied warranties is inconsistent with the finding allocating 0% of the responsibility for such damages to these defendants. Wiseman instead argues that the trial court erred in failing to disregard the jury's proportionate-responsibility finding that Sepco and United Casing are not responsible for any part of Wiseman's damages arising from their breaches of implied warranties.

■ Generally, breach of an implied warranty under article 2 of the Texas Uniform Commercial Code is a tort claim. *See JCW Elecs., Inc. v. Garza*, 257 S.W.3d 701, 704–05 (Tex.2008). In *JCW Electronics*, the court noted that as originally enacted, Chapter 33 of the Texas Civil Practices and Remedies Code expressly was applicable to actions "to recover damages for personal injury, property damages, or death in which at least one defendant is found liable on a basis of . . . breach of warranty under chapter 2, Business & Commerce Code." *Id.* at 704 (quoting Act of June 3, 1987, 70th Leg., 1st C.S., ch. 2, § 2.04, 1987 Tex. Gen. Laws 37, 41). The court further explained that although

Chapter 33 was subsequently amended,[6] "there is no indication that the Legislature intended to restrict the scope of Chapter 33 by explicitly removing implied warranties." *Id.* Wiseman contends that *JCW Electronics* is inapplicable because that case concerned personal injury and death rather than property damage. But in *JCW Electronics,* as in *Medical City Dallas v. Carlisle,* the court did not narrowly limit its holding to the facts of the case, but stated its reasoning in a manner that applies equally here. Specifically, the court based its holding in *JCW Electronics* on the legislature's intent that Chapter 33 be applied to claims for "personal injury, property damages, or death" under chapter 2 of the Texas Uniform Commercial Code. Here, the implied-warranty claims were submitted to the jury in language tracking section 2.314(b) of the Business and Commerce Code.

■ Wiseman does not dispute that the implied-warranty claims are claims for breach of warranty under chapter 2 of the Business and Commerce Code; however, Wiseman points out that the court recognized an exception in that, "when the damages are purely economic, the claim sounds in contract." *Id.* at 705. But Wiseman's position at trial was that the damages at issue were not purely economic because the tubing string also damaged property when it failed. For example, Kurt Wiseman testified that the formation and the well bore were damaged as follows:

Q. When this fails, the frac job goes awry, what does that do to the for-

mation when the frac gets messed up?

A. Well, you—now you have got mud, which is extremely damaging, exposed to formation as well. You got gas and mud and frac proppant trying to come up the back side, as well as up the tubing. You got a severe problem.

Q. Did this failed frac result in the fluids to go the wrong place, cause damage to the formation, in terms of its—your ability to get oil and gas out of there?

A. Yes. Having mud across the formation is damaging. . . . The mud went into the fracture, made it to the point where the well was actually showing skin damage, which is damage near the well bore, not allowing it to flow. So, yes, the mud was obviously damaging.

Q. Could you repair the damage?

A. Only way to attempt to repair that damage would be to re[-]frac the well.

Wiseman's expert Richard Klem similarly testified that the tubing string failures resulted in "s kin damage" or "positive skin," meaning that the perforations that had been made in the casing to perform the fracture stimulation became blocked. In addition, the evidence Wiseman submitted in support of its damages claim include itemized invoices for the costs to repair various items of production equipment and to remove mud from equipment, tanks, and transport trucks. And finally, Wiseman's attorney testified,

---

**6.** Regarding the proportionate-responsibility provision of section 33.002, *see* Act of June 3, 1987, 70th Leg., 1st C.S., ch. 2 § 2.05, 1987 Tex. Gen. Laws 37, 41, *amended by* Act of May 29, 1989, 71st Leg., ch. 380 § 4, 1989 Tex. Gen. Laws 1490, 1492, *amended by* Act of May 8, 1995, 74th Leg., ch. 136, § 1, l995 Tex. Gen. Laws 971, 971–72, *amended by* Act of May 19, 1995, 74th Leg., ch. 414, § 17, 1995 Tex. Gen. Laws 2988, 3003, *amended by* Act of May 21, 2001, 77th Leg., ch. 643, § 2, 2001 Tex. Gen. Laws 1208, 1208–09, *amended by* Act of June 2, 2003, 78th Leg., ch. 204, §§ 4.01, 4.10(1), 2003 Tex. Gen. Laws 847, 855, 859.

The measure of damages when you are provided defective materials that ruin your well is three things: A, the cost to repair the well, if that can be done. If it cannot be repaired—what we're seeking for there is the lesser of the three. The cost to repair the well, and if you can't repair the well you are entitled to recover the cost to replace the well.

This is the correct measure of damage to the reservoir or the well bore. *See Dresser Indus., Inc. v. Page Petroleum, Inc.,* 853 S.W.2d 505, 511–12 (Tex.1993); *Atex Pipe & Supply, Inc. v. Sesco Prod. Co.,* 736 S.W.2d 914, 917 (Tex.App.-Tyler 1987, writ denied). But these costs are subject to apportionment. *See Dresser,* 853 S.W.2d at 511–12 (apportioning damages in accordance with the percentage of responsibility found by the jury). Damage to the well formation is damage to an interest in real property. *Atex,* 736 S.W.2d at 917. And damage to the well bore is damage to a real estate improvement. *Wagner & Brown, Ltd. v. Sheppard,* 282 S.W.3d 419, 426 (Tex.2008). Both are "property damage"; thus, the exception applicable to implied-warranty claims that result solely in economic damages does not apply here. *See Bay Rock Operating Co. v. St. Paul Surplus Lines Ins. Co.,* 298 S.W.3d 216, 230 (Tex.App.-San Antonio 2009, pet. denied) (holding that damage claim for the costs to repair a well is a claim for property damage, not economic loss); *see also Equistar Chems., L.P. v. Dresser–Rand Co.,* 240 S.W.3d 864, 868 (Tex.2007) (treating a factual finding of the costs "to restore" a plant as tort damages where the plaintiff failed to object that the jury question allowed the jury to find both tort damages and economic losses in a single answer); *Parkway Co. v. Woodruff,* 901 S.W.2d 434, 441 (Tex.1995) (explaining that property damage can be measured by diminution in value or cost of repair).

We conclude that the Wiseman's implied-warranty claims against Sepco and United Casing sound in tort, and thus, the trial court did not err in applying the jury's proportionate-responsibility finding to the damages associated with these claims. We therefore overrule Wiseman's first cross-issue.

## C. Alternative Bases for Recovery

Wiseman contends in his second issue that the trial court erred in failing to award judgment against Cressman on the alternative basis of breach of contract. The jury found that Cressman's failure to comply with its contract caused Wiseman damages of only $5,481, but Wiseman contends that the evidence is factually insufficient to support this finding. He argues that he presented a single model for damages and in response to every other damage question, the jury found that Wiseman had sustained damages of $548,187. He therefore argues that the jury's finding of contract damages in the amount of $5,481 is inconsistent with the jury's other damage findings, and maintains that the trial court should have substituted the higher damages found by the jury in connection with Wiseman's warranty and DTPA claims for the lower contract damages.

These arguments are without merit. A complaint that the jury's findings are inconsistent is waived if it is not raised before the jury is discharged. *Kennedy Ship & Repair, L.P. v. Pham,* 210 S.W.3d 11, 24 (Tex.App.-Houston [14 Dist.] 2006, no pet.); Tex.R. Civ. P. 295. Because Wiseman did not timely raise this complaint, we will not attempt to reconcile the purportedly inconsistent findings. *See Springs Window Fashions Div., Inc. v. Blind Maker, Inc.,* 184 S.W.3d 840, 867 (Tex.App.-Austin 2006, pet. granted, judgm't vacated w.r.m.).[7] Moreover, the

7. Nor do we imply that a court may reconcile inconsistent findings by substituting a higher

remedy for a judgment based on factually insufficient evidence is a new trial, not substitution of one finding for another. *See Glover v. Tex. Gen. Indent. Co.*, 619 S.W.2d 400, 401–02 (Tex.1981) (per curiam). Wiseman has not requested a new trial, and at oral argument, Wiseman's counsel affirmatively stated that Wiseman does not want a new trial. We therefore overrule Wiseman's second issue.[8]

## V. CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

damage figure for a lower one. *See, e.g., Aztec Corp. v. Tubular Steel, Inc.*, 758 S.W.2d 793, 800 (Tex.App.-Houston [14th Dist.] 1988, no writ) ("We cannot substitute our judgment for that of the jury and order additur....").

8. In a footnote, Wiseman further asserts that the trial court also should have included breach of an implied warranty as an alternative basis for the judgment against Cressman. As previously discussed, however, the jury's proportionate-responsibility findings apply to such claims. Wiseman's recovery against Cressman for breach of an implied warranty therefore would be less than the recovery for breach of an express warranty, and a plaintiff is entitled to judgment on the theory that affords the greatest or most favorable relief. TEX.R. CIV. P. 301; *Boyce Iron Works, Inc. v. Sw. Bell Tel. Co.*, 747 S.W.2d 785, 787 (Tex. 1988).