Marc W. Brown, Justice
Appellant Theresa D. Burnett, the plaintiff in a personal-injury car-accident case, appeals a take-nothing final judgment in favor of appellee Maria D. Rios. Burnett argues that she should be granted a new trial because: (1) the jury findings on general liability and percentage causation were in irreconcilable conflict; (2) the trial court sua sponte accepted the jury's verdict without allowing Burnett a sufficient opportunity to object before the jury was released; (3) the jury's finding that Rios was zero-percent comparatively negligent was not supported by factually sufficient evidence; and (4) that finding also was not supported by legally sufficient evidence. We affirm.
I. BACKGROUND
At approximately 7:30 a.m. on March 21, 2012, Maria Rios dropped off her daughter at Cesar E. Chavez High School. Rios then attempted to turn left across incoming traffic at the break in the median. Theresa Burnett was driving to the same school where she worked as a teacher's assistant, traveling at approximately 35 mph. Rios did not see Burnett's vehicle and started turning left. Rios stopped when she saw Burnett's vehicle, but the two vehicles collided. Both vehicles were drivable. No ambulance was dispatched.
Burnett experienced neck and back pain or soreness later in the day. After school ended for the day, Burnett went to the emergency room and received medical treatment for neck pain. Burnett later received additional chiropractic and medical treatment. In November 2013, Burnett had surgery to fuse a degenerative herniated cervical disc.
Burnett previously had been involved in a four-car accident in May 2010-her vehicle was at a standstill and was hit from the rear. Burnett experienced neck and back pain, went to the emergency room, and received medical treatment. An x-ray taken at that time noted degenerative changes in Burnett's spine. Burnett did not follow the recommendation to see her own physician for reassessment.
Burnett brought suit against Maria Rios for negligence and against Rios's husband Hector for negligent entrustment of his vehicle.[1] Rios filed a general denial and pleaded proportionate responsibility under chapter 33 of the Texas Civil Practice and Remedies Code.
The case went to jury trial. Rios and Burnett testified. In addition, Burnett presented testimony from an orthopedic surgeon-Stephen *218 Esses, M.D.-by video deposition.[2]
In question number 1 of the charge, the jury was asked did the negligence, if any, of Rios and Burnett proximately cause the occurrence in question.[3] "Occurrence in question" was defined as "the collision that occurred on March 21, 2012 involving Theresa Burnett and Maria Rios." Question number 1 also included definitions for "negligence," "ordinary care," and "proximate cause."[4] The jury answered "yes" as to both Rios and Burnett.
If the jury answered "yes" for both Rios and Burnett on question number 1, then it was to answer question number 2: "What percentage of the negligence that caused the occurrence do you find to be attributable to each of those found by you, in your answer to Question 1, to have been negligent?" The jury was instructed:
Assign percentages of responsibility only to those you found caused or contributed to cause the injury[.] The percentages you find must total 100 percent[.] The percentages must be expressed in whole numbers[.] The percentage of responsibility attributable to any one is not necessarily measured by the number of acts or omissions found[.] The percentage attributable to any one need not be the same percentage attributed to that one in answering another question[.]
At the end of this instruction, the jury was asked:
For each person you found caused or contributed to cause the injury, find the percentage of responsibility attributable to each[.[5] ]
*219 The jury answered "0%" for Rios and "100%" for Burnett. Because question number 3 on damages was predicated on a "Yes" answer for Rios on question number 1 and either of a "No" answer for Burnett on question number 1 or a fifty-percent-or-less answer for Burnett on question number 2, the jury did not reach question number 3. Neither Burnett nor Rios objected to the jury charge.
The trial court read the verdict aloud, accepted it, and made it part of the court's record. Trial counsel for Burnett raised an objection "to the entry of the actual verdict itself based on the fact that the jury answered to negligence to both parties, but then answered zero percent and 100 percent." The trial court stated that the jury had been released and restated that the verdict was accepted.
The trial court signed its final judgment, ordering that Burnett take nothing against Rios. Burnett filed a motion for new trial, arguing that a new trial should be granted because: (1) the general-liability and percentage-causation jury answers were in conflict; (2) the jury's finding attributing zero-percent liability to Rios was against the great weight and preponderance of the evidence; and (3) the evidence established as a matter of law that Rios was more-than-zero-percent legally responsible. The trial court denied Burnett's motion for new trial, and Burnett timely appealed.
II. ANALYSIS
Although Burnett presents four issues in the "Issues Presented" section of her brief, she includes six subheadings in her "Argument" section without particular reference to a corresponding issue number. We address her arguments in connection with her listed issues.
A. No fatal conflict between the jury's liability and proportionate-responsibility findings
We first consider Rios's threshold argument that Burnett waived her first issue regarding the perceived irreconcilable conflict in the jury's verdict by not objecting before the jury was discharged. Rios relies on Cressman Tubular Products Corp. v. Kurt Wiseman Oil & Gas, Ltd. , 322 S.W.3d 453, 462 (Tex. App.-Houston [14th Dist.] 2010, pet. denied), where we applied the principle that "[a] complaint that the jury's findings are inconsistent is waived if it is not raised before the jury is discharged."
Burnett acknowledges that generally a party must raise an objection under Texas Rule of Civil Procedure 295 before the trial court accepts the verdict or the conflict in the jury's answers is waived. See Tex. R. Civ. P. 295. According to Burnett, trial counsel promptly objected to the conflicting jury answers at the first opportunity. Burnett also contends that the appellate rules, such as preservation under rule 33.1, are to be liberally construed in favor of the right to appeal.
The trial transcript contains the notation "(Jury released)" just before Burnett's trial counsel informed the trial court that he "wanted to put an objection on the record" and objected to the entry of the verdict. However, the trial court did not announce on the record that the jury had been released until after Burnett had lodged her objection. The trial court also clearly indicated its awareness of the issue *220 and that it anticipated Burnett's filing "a post-verdict motion to that effect ... if you care to do it." Unlike in Cressman Tubular Products , Burnett filed such motion and expressly requested a new trial on the conflicting-findings issue, and the trial court denied Burnett's motion. Cf. 322 S.W.3d at 462-63. Based on this record, we do not find waiver.
As to the merits of her first issue, Burnett does not challenge the propriety of the charge submitted.[6] Rather, Burnett seeks reversal because the jury's answer that Rios was a proximate cause of the collision was in irreconcilable conflict with the jury's subsequent answer apportioning "0%" of responsibility to Rios. Burnett relies on Sproles v. Rosen , 126 Tex. 51, 84 S.W.2d 1001, 1003 (1935), and Williams v. Finley , 567 S.W.2d 611, 612 (Tex. Civ. App.-Amarillo 1978, writ ref'd n.r.e.). Neither case controls our determination of whether these jury findings were fatally in conflict. Unlike Sproles , this case does not involve any perceived conflict among particularized jury findings of no negligence by the plaintiff passenger, see 84 S.W.2d at 1003, and a general finding that she failed to use reasonable care which was disregarded by the trial court, see ids="10262320,2296219" index="6" url="https://cite.case.law/sw2d/84/1001/">id. at 1002-03.[7] In Williams , the appellate court did not directly address the allegedly irreconcilable conflict at issue. 567 S.W.2d at 612. Instead, the court reversed and remanded on the basis that the finding that zero percent of the negligence was attributable to the plaintiff truck driver was against the great weight and preponderance of the evidence. Id. at 612, 613.[8]
Rios responds that there was no conflict between the jury findings, and even if there were, that the trial court properly harmonized any apparent conflict. Rios relies on Union Carbide Corp. v. Gayton , 486 S.W.2d 865, 867 (Tex. Civ. App.-Houston [14th Dist.] 1972, writ ref'd n.r.e.). In Gayton , we considered whether jury findings that the plaintiff seaman who suffered a fall on the defendant employer's ship committed particularized acts of negligence and that his negligence contributed "0%" to cause his injuries were in irreconcilable conflict. Id. at 866-67. We rejected that argument and reconciled the answers in keeping with the rule of liberal construction in favor of reconciliation. Id. at 867.
We apply the more-recent, fatal-conflict analysis utilized by the Supreme Court of Texas in Arvizu v. Estate of Puckett , 364 S.W.3d 273, 275-77 (Tex. 2012) (per curiam). In Arvizu , the Court explained that the threshold question in *221 reviewing jury findings for fatal conflict is "whether the findings are about the same material fact." Id. at 275-76 (quoting Bender v. S. Pac. Transp. Co. , 600 S.W.2d 257, 260 (Tex. 1980) ). When making this determination, courts have a duty to harmonize jury findings whenever possible. Id. at 276. If there is any possible basis upon which jury findings may be reconciled, then courts must do so. Id. (citing Bender , 600 S.W.2d at 260 ).
"The inquiry does not end, however, if the court determines that the findings create a conflict about the same material fact. The court must determine whether the conflict is fatal to the entry of judgment." Id. (citing Bay Petroleum Corp. v. Crumpler , 372 S.W.2d 318, 319 (Tex. 1963) ). The Arvizu Court further explained:
To determine whether a conflict is fatal,
the court must consider each of the answers claimed to be in conflict, disregarding the alleged conflicting answer but taking into consideration all of the rest of the verdict, and if, so considered, one of the answers would require a judgment in favor of the plaintiff and the other would require a judgment in favor of the defendant, then the answers are fatally in conflict.
Id. (quoting Little Rock Furniture Mfg. Co. v. Dunn , 148 Tex. 197, 222 S.W.2d 985, 991 (1949) ); see also Williams v. Compressor Eng'g Corp. , 704 S.W.2d 469, 473 (Tex. App.-Houston [14th Dist.] 1986, writ ref'd n.r.e.) ("For a verdict to be set aside, the conflicting answers must be such that one answer would establish a cause of action or defense, while the other would destroy it." (citing Little Rock , 222 S.W.2d at 991 )). "Findings can be 'inconsistent or in conflict, or even in irreconcilable conflict,' and still not be fatal to the entry of judgment." Arvizu , 364 S.W.3d at 276 (quoting Bay Petroleum , 372 S.W.2d at 319 ). "Thus, to satisfy this test, the party claiming conflict must show that one of the conflicting findings 'necessarily requires the entry of a judgment different from that which the court has entered.' " Id. (quoting Little Rock , 222 S.W.2d at 991 ).
Neither Rios nor Burnett objected to the wording of question number 1 or its accompanying instructions, and there is no dispute that the jury found both Rios and Burnett to be contributorily negligent to the occurrence in question-defined as the March 21, 2012 vehicle collision. The predicate to question number 2 required that the jury find both Rios's and Burnett's negligence to have proximately caused the collision. Based on its "yes" answers to question number 1, the jury reached question number 2-which asked: "What percentage of the negligence that caused the occurrence do you find to be attributable to each of those found by you, in your answer to Question 1, to have been negligent?" The jury was instructed that it was to assign percentages of responsibility "only to those you found caused or contributed to cause the injury" adding up to 100 percent. The jury was further instructed that the percentage responsibility "attributable to any one is not necessarily measured by the number of acts or omissions found" and "need not be the same percentage attributed to that one in answering another question." Finally, the jury was told to find the percentage of responsibility "[f]or each person you found caused or contributed to cause the injury." The jury answered "0%" for Rios and "100%" for Burnett. Neither Rios nor Burnett objected to the wording of question number 2 or its accompanying instruction.
The "yes" answers to question number 1 essentially constituted findings that both Rios and Burnett caused the occurrence, *222 expressly defined as the collision. Question number 2 was predicated on "yes" answers to question number 1 and the initial portion included the term "occurrence," asking what percentage of the negligence that caused the occurrence did the jury find attributable to each of Rios and Burnett. However, question number 2 later twice referred to assigning responsibility percentages for causing or contributing to cause the "injury"-in the instruction and then in the final portion of the question that asked the jury to find the percentage of responsibility attributable to each of Rios and Burnett. In other words, questions number 1 and 2 did not consistently discuss negligence or responsibility in terms of causing the occurrence versus causing the injury. Cf. State Bar of Tex., Texas Pattern Jury Charges-General Negligence, Intentional Personal Torts & Workers' Compensation PJC 4.1, 4.3 & 4.3 cmt. (2014) (cautioning that "occurrence," "injury," or "occurrence or injury" as used in question at PJC 4.1 also should be used in question at PJC 4.3). Because question number 2 referred both to negligence causing the occurrence and to responsibility for causing the injury,[9] the jury's answer that Rios should be apportioned zero percent of that negligence or responsibility arguably conflicted with the answer to question number 1, which indicated Rios was responsible for at least some portion of the negligence causing the occurrence.
This does not end our inquiry. See Arvizu , 364 S.W.3d at 276. Applying the Little Rock test, when the finding in question number 1 is disregarded, judgment would be rendered in favor of Rios and against Burnett because question number 2's finding that Rios was zero-percent responsible and Burnett was 100-percent responsible for causing or contributing to the occurrence or the injury supported Rios's affirmative defense that Burnett was primarily responsible for the occurrence or injury.[10]
*223 When question number 2's finding is disregarded, however, Burnett is not necessarily entitled to a judgment different from the trial court's. This is because, as the plaintiff, for purposes of being entitled to recover a judgment on her negligence claim against Rios, Burnett had to establish at trial two causal nexuses: (1) between the defendant's negligent act(s) and the event sued upon, and (2) between the event sued upon and the plaintiff's injuries. See Morgan v. Compugraphic Corp. , 675 S.W.2d 729, 731 (Tex. 1984) ; In re Moor , No. 14-12-00933-CV, 2012 WL 5463193, at *2 (Tex. App.-Houston [14th Dist.] Nov. 8, 2012, no pet.) (mem. op.) (per curiam) ("To establish causation in a personal injury case, a plaintiff must prove the conduct of the defendant caused an event and that this event caused the plaintiff to suffer compensable injuries." (citing Morgan , 675 S.W.2d at 731 )). That is, even if the defendant's liability for the event sued upon has been established, proof of the causal nexus between the event sued upon and the plaintiff's injuries "is necessary to ascertain the amount of damages to which the plaintiff is entitled." Morgan , 675 S.W.2d at 732 ; see also Katy Springs & Mfg., Inc. v. Favalora , 476 S.W.3d 579, 593 (Tex. App.-Houston [14th Dist.] 2015, pet. denied) (citing Morgan , 675 S.W.2d at 732 ).
While the "yes" answer as to Rios in question number 1 established that a causal connection existed between Rios's negligent conduct and the occurrence, defined in the charge as the collision, this finding did not automatically establish that a causal connection existed between the occurrence and Burnett's injuries.[11] See Otis Spunkmeyer, Inc. v. Blakely , 30 S.W.3d 678, 685 (Tex. App.-Dallas 2000, no pet.) ("It is clear that 'injury' and 'occurrence' are not synonymous.") (citing Upjohn Co. v. Freeman , 885 S.W.2d 538, 548 (Tex. App.-Dallas 1994, writ denied) ); Upjohn , 885 S.W.2d at 548 (holding jury finding that marketing defect was producing cause of occurrence in question was not "tantamount" to finding that defect was producing cause of alleged injury). In other words, merely obtaining a "yes" answer as to Rios in question number 1 did not complete Burnett's proof of causation such that she was otherwise entitled to her damages. See Morgan , 675 S.W.2d at 731-32 ; Little Rock , 222 S.W.2d at 990-91 ; see also BP Am. Prod. Co. v. Red Deer Res., LLC , 526 S.W.3d 389, 395 n.4 (Tex. 2017) (citing Little Rock , 222 S.W.2d at 990, for the explanation "that before a party is entitled to judgment in its favor, it must satisfy its burden of obtaining jury findings in its favor on every essential element of its claim"); Greater Houston Transp. Co. v. Phillips , 801 S.W.2d 523, 525 (Tex. 1990) (elements of negligence cause of action are legal duty, breach of that duty, and damages proximately caused by that breach of duty).
Moreover, Burnett did not object to question number 3 or its accompanying instructions. Question number 3 asked *224 what sum of money, if any, paid now in cash would fairly and reasonably compensate Burnett for her injuries, if any, that resulted from the occurrence in question. A favorable answer could have supplied the requisite missing causal connection between the occurrence and Burnett's injuries. Because the jury was instructed not to reach question number 3 based on its prior answers, Burnett was left without any other finding that would require entry of judgment in her favor on her negligence claim against Rios. See Little Rock , 222 S.W.2d at 990-91 (conflict in jury answers was not fatal to judgment where defendant did not object to conditional submission of and therefore essential element was not reached). Accordingly, we cannot conclude that the jury's answers to questions number 1 and 2 were in fatal conflict.
We overrule Burnett's first issue.
B. Trial-court error regarding acceptance of the verdict and release of the jury waived
In her second issue, Burnett argues that a new trial should be granted because the trial court preemptively accepted the verdict sua sponte without permitting objections and prematurely released the jury. Rios responds that Burnett also waived this issue. This time, we agree. The record does not reveal that Burnett objected to the trial court's allegedly defective conduct either verbally at the time or in her written motion for new trial, or that the trial court expressly or implicitly ruled on her complaint. We conclude that this issue was not properly preserved. See Tex. R. App. P. 33.1(a) ; Reule v. M & T Mortg. , 483 S.W.3d 600, 620 (Tex. App.-Houston [14th Dist.] 2015, pet. denied) ("Generally, to present a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely request, objection, or motion stating with sufficient specificity the grounds for relief sought and that the trial court ruled on the complaint, either expressly or implicitly.").
C. Zero-percent proportionate-responsibility finding
In her third and fourth issues, Burnett challenges the evidence as being both factually and legally insufficient to support the jury's apportioning "0%" comparative liability to Rios.
When analyzing the legal sufficiency of the evidence, we review the record in the light most favorable to the challenged finding, crediting favorable evidence if a reasonable factfinder could and disregarding contrary evidence unless a reasonable factfinder could not. See City of Keller v. Wilson , 168 S.W.3d 802, 822, 827 (Tex. 2005). Evidence is legally sufficient if it "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." Ford Motor Co. v. Ridgway , 135 S.W.3d 598, 601 (Tex. 2004) (quoting Merrell Dow Pharm., Inc. v. Havner , 953 S.W.2d 706, 711 (Tex. 1997) ). "Anything more than a scintilla of evidence is legally sufficient to support the finding." Formosa Plastics Corp. U.S.A. v. Presidio Eng'rs & Contractors, Inc. , 960 S.W.2d 41, 48 (Tex. 1998). "More than a scintilla exists when the evidence would enable reasonable and fair-minded people to reach different conclusions." Burbage v. Burbage , 447 S.W.3d 249, 259 (Tex. 2014). We will conclude that the evidence is legally insufficient to support the finding if (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite *225 of the vital fact. City of Keller , 168 S.W.3d at 810.
In reviewing a factual-sufficiency point, we examine the entire record, considering the evidence both in favor of, and contrary to, the challenged findings. Maritime Overseas Corp. v. Ellis , 971 S.W.2d 402, 406-07 (Tex. 1998) ; Cain v. Bain , 709 S.W.2d 175, 176 (Tex. 1986) (per curiam). When a party challenges the factual sufficiency of the evidence supporting a finding for which it did not have the burden of proof, we may set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. See Ellis , 971 S.W.2d at 407. The amount of evidence necessary to affirm is far less than the amount necessary to reverse a judgment. GTE Mobilnet of S. Tex. v. Pascouet , 61 S.W.3d 599, 616 (Tex. App.-Houston [14th Dist.] 2001, pet. denied). We may not substitute our own judgment for that of the factfinder or pass upon the credibility of witnesses. Id. (citing Ellis , 971 S.W.2d at 407 ).
In her third issue, with regard to factual insufficiency, Burnett relies on Williams v. Finley and essentially reurges her first issue that the trial court could not enter judgment because the findings were in fatal conflict. We already rejected Burnett's argument that because the jury found a causal connection between Rios's negligent conduct and the occurrence, this finding also established the requisite causal connection between the occurrence and Burnett's personal injuries. In addition, in Williams , the truck driver plaintiff did not provide, and the appellate court could "not visualize, any circumstance of record which would tend to prove, or reasonably lead to the inference" that such causal connection did not exist. See 567 S.W.2d at 613.
In contrast, Rios presented evidence supporting a defensive theory that her driving conduct, even if negligent and a cause of the collision, did not cause or contribute to Burnett's neck injury and that Burnett's own conduct regarding a preexisting condition did instead. Rios testified that physically "nothing happened to" Burnett and her as a result of the collision. Burnett stated that she was "[j]ust embarrassed and nervous" but felt no "physical pain" right after the collision. The cars were drivable afterward, and no ambulance was called. No injuries were noted on the police report. Burnett did not initially seek a referral for her neck pain from her primary physician after the March 2012 crash. Moreover, there was evidence that Burnett previously suffered a neck injury, visited the emergency room, and was diagnosed with "cervicalgia" after a May 2010 car accident; that Burnett failed to pursue the recommended follow-up medical care after the May 2010 accident; and that Burnett had preexisting degenerative neck damage as early as May 2010. Esses acknowledged that "most herniated discs occur spontaneously" without any trauma such as a car accident. Burnett denied any prior problem with her neck to Esses. Burnett also did not tell the neurosurgeon who performed her disc surgery that her neck problem resulted from the March 2012 car accident. The medical records indicate that Burnett's disc surgery was performed to prevent worsening of her "degenerative disc disease."
Burnett points to evidence pertaining to the facts of the collision, such as that Rios had no criticism of Burnett's driving and did not disagree with the police report that Rios was the sole contributing factor to the March 2012 accident. Burnett points out that she visited the emergency room later on the same day of the collision and then continued to seek medical treatment. Burnett also points to a statement by one of her treating physicians that there was a *226 95-percent probability that her herniated disc occurred as a result of a traumatic event and the March 2012 incident was the most probable cause. In addition, Esses provided his opinion that Burnett's disc herniation occurred as a result of the March 2012 accident.
Reviewing the record in the light most favorable to the challenged finding, we conclude that reasonable, fair-minded people could reasonably have found that zero percent of the responsibility for causing or contributing to cause Burnett's injuries was attributable to Rios. Accordingly, we reject Burnett's argument that the evidence established as a matter of law "all vital facts in support of attributing some percentage of causation" for Burnett's injuries to Rios's negligence.[12]
We overrule Burnett's fourth issue.
Considering all the evidence supporting and contradicting the zero-percent finding, we also cannot conclude that the finding is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust.
We also overrule Burnett's third issue.
III. CONCLUSION
Having overruled all of Burnett's issues, we affirm the trial court's judgment.

Burnett only names Maria Rios as appellee, and Hector Rios is not a party to this appeal. Generally, we refer to Maria Rios simply as Rios.

Esses treated Burnett and recommended she have surgery to treat her herniated disc, but was not the doctor who performed the surgery.

See State Bar of Tex., Texas Pattern Jury Charges-General Negligence, Intentional Personal Torts & Workers' Compensation PJC 4.1 (2014) ("Did the negligence, if any, of those named below proximately cause the [occurrence ] [injury ] [occurrence or injury ]? Answer 'Yes' or 'No' for each of the following: ....").

The definitions provided were:
"Negligence" means failure to use ordinary care, that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances[.]
"Ordinary care" means that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances[.]
"Proximate cause" means a cause that was a substantial factor in bringing about an event, and without which cause such event would not have occurred[.] In order to be a proximate cause, the act or omission complained of must be such that a person using the degree of care required of him would have foreseen that the event, or some similar event, might reasonably result therefrom[.] There may be more than one proximate cause of an event.

PJC 4.3 on "Proportionate Responsibility" provides:
If you answered "Yes" to Question(s) _____ [applicable liability question(s) ] for more than one of those named below, then answer the following question. Otherwise, do not answer the following question.
Assign percentages of responsibility only to those you found caused or contributed to cause the [occurrence ] [injury ] [occurrence or injury ]. The percentages you find must total 100 percent. The percentages must be expressed in whole numbers. The percentage of responsibility attributable to any one is not necessarily measured by the number of acts or omissions found. The percentage attributable to any one need not be the same percentage attributed to that one in answering another question.
QUESTION _____
For each person you found caused or contributed to cause the [occurrence ] [injury ] [occurrence or injury ], find the percentage of responsibility attributable to each:
...
Total 100%
State Bar of Tex., Texas Pattern Jury Charges-General Negligence, Intentional Personal Torts & Workers' Compensation PJC 4.3 (2014). With regard to the use of "occurrence," "injury," or "occurrence or injury," the PJC explains that "[t]he term used in the question at PJC 4.1 (see PJC 4.1 Comment) should also be used in PJC 4.3." Id. cmt.

Burnett states in her brief that "[t]he jury was properly charged by the Court."

The 1988 amendment to rule 277 of the Texas Rules of Civil Procedure, which provided that "[i]n all jury cases the court shall, whenever feasible, submit the cause upon broad-form questions," Tex. R. Civ. P. 277, greatly simplified jury-charge practice in ordinary negligence cases, such as car-accident cases. See 4 McDonald & Carlson Tex. Civ. Prac. § 22:5 (2d. ed. Dec. 2017 update) ("Unlike the former practice in an automobile accident case, for example, the Texas Pattern Jury Charges give neither special issues nor instructions about " 'speed, lookout, or brakes.' These, and all of the other old negligence special issues, are subsumed in the general instruction regarding 'ordinary care.' " (footnotes omitted)); State Bar of Tex., Texas Pattern Jury Charges-General Negligence, Intentional Personal Torts & Workers' Compensation PJC 2.1, 4.1 (2014).

Additionally, during oral argument, Burnett relied on Kitchen v. Frusher , 181 S.W.3d 467 (Tex. App.-Fort Worth 2005, no pet.). However, Kitchen does not include any analysis regarding irreconcilably conflicting answers; there, the appellate court agreed that the appellant failed to preserve any such error by not objecting to the allegedly conflicting answers prior to the jury's discharge. Id. at 473.

Because of the references to both negligence for causing the occurrence and responsibility for causing the injury in the same question, question number 2 and its accompanying instruction did not track the PJC and arguably contained an intra-question conflict. See supra n.5. However, no party objected to this language in the jury charge. Nor does Burnett challenge any irreconcilable internal conflict within question number 2 and its accompanying instruction on appeal.

The proportionate-responsibility statute, as set forth in chapter 33, provides a framework for apportioning percentages of responsibility in the calculation of damages in any case in which more than one person, including the plaintiff, is alleged to have caused or contributed to cause the harm for which recovery of damages is sought. See Tex. Civ. Prac. & Rem. Code Ann. § 33.003 (West 2013) ; JCW Elecs., Inc. v. Garza , 257 S.W.3d 701, 702 (Tex. 2008). Consistent with the fundamental tenet of tort law that a person's liability arises from his own injury-causing conduct, the purpose of chapter 33 is to hold each person " 'responsible [only] for [the person's] own conduct causing injury.' " MCI Sales & Serv., Inc. v. Hinton , 329 S.W.3d 475, 505 (Tex. 2010) (first alteration added) (quoting F.F.P. Operating Partners, LP v. Duenez , 237 S.W.3d 680, 690 (Tex. 2007) ). Accordingly, the statute requires the factfinder to determine the percentage of responsibility of each claimant, defendant, settling person, and responsible third party who has been designated in accordance with the statute. See Tex. Civ. Prac. & Rem. Code § 33.003.
If chapter 33 applies to a claim, "a claimant may not recover damages if his percentage of responsibility is greater than 50 percent." Tex. Civ. Prac. & Rem. Code Ann. § 33.001 (West 2013) ; Underwriters at Lloyds v. Edmond, Deaton & Stephens Ins. Agency, Inc. , No. 14-07-00352-CV, 2008 WL 5441225, at *3 (Tex. App.-Houston [14th Dist.] Dec. 30, 2008, no pet.) (mem. op.). Here, Rios pleaded the affirmative defense of proportionate responsibility and bore the burden to prove by a preponderance of the evidence that Burnett's responsibility for causing or contributing to cause the injuries for which recovery of damages was sought was greater than fifty percent. See Tex. Civ. Prac. & Rem. Code Ann. §§ 33.001 -.003 (West 2013); Arceneaux v. Pinnacle Entm't, Inc. , 523 S.W.3d 746, 747 (Tex. App.-Houston [14th Dist.] 2017, no pet.) ; Hudson v. City of Houston , No. 14-03-00565-CV, 2005 WL 3995160, at *5 (Tex. App.-Houston [14th Dist.] Jan. 6, 2005, no pet.) (mem. op.).

At argument, Burnett contended that there was an "implied finding" of injury-causing conduct by Rios because "occurrence" in question number 1 implied or included "injury." Burnett does not provide, and we have not located, any authority to support such position. None of the definitions given in question number 1 references "injury." Moreover, the express definition given for the "occurrence in question" was the March 21, 2012 collision.

Where Rios had to show that Burnett was greater-than-fifty-percent proportionately responsible for causing Burnett's injuries to defeat Burnett's claims, arguably to prevail on legal insufficiency Burnett would need to conclusively establish the opposite of this "vital fact," or that Rios was at-least-fifty-percent proportionately responsible for causing Burnett's injuries such that Burnett could recover damages. See Tex. Civ. & Rem. Code. Ann. § 33.001.